SCHLAGENHAUF *v.* HOLDER, U. S. DISTRICT
JUDGE FOR THE SOUTHERN DISTRICT
OF INDIANA.

No. 8.  Argued October 13, 1964.—Decided November 23, 1964.

*Robert S. Smith* argued the cause for petitioner. With him on the briefs was *Wilbert McInerney*.

*Erle A. Kightlinger* argued the cause for respondent. With him on the brief were *Aribert L. Young* and *Keith C. Reese*.

MR. JUSTICE GOLDBERG delivered the opinion of the Court.

This case involves the validity and construction of Rule 35 (a) of the Federal Rules of Civil Procedure as applied to the examination of a defendant in a negligence action. Rule 35 (a) provides:

> "Physical and Mental Examination of Persons. (a) Order for examination. In an action in which the mental or physical condition of a party is in controversy, the court in which the action is pending may order him to submit to a physical or mental examination by a physician. The order may be made only on motion for good cause shown and upon notice to the party to be examined and to all other parties and shall specify the time, place, manner, conditions, and scope of the examination and the person or persons by whom it is to be made."

I.

An action based on diversity of citizenship was brought in the District Court seeking damages arising from personal injuries suffered by passengers of a bus which collided with the rear of a tractor-trailer. The named defendants were The Greyhound Corporation, owner of

the bus; petitioner, Robert L. Schlagenhauf, the bus driver; Contract Carriers, Inc., owner of the tractor; Joseph L. McCorkhill, driver of the tractor; [1] and National Lead Company, owner of the trailer. Answers were filed by each of the defendants denying negligence.

Greyhound then cross-claimed against Contract Carriers and National Lead for damage to Greyhound's bus, alleging that the collision was due solely to their negligence in that the tractor-trailer was driven at an unreasonably low speed, had not remained in its lane, and was not equipped with proper rear lights. Contract Carriers filed an answer to this cross-claim denying its negligence and asserting "[t]hat the negligence of the driver of the . . . bus [petitioner Schlagenhauf] proximately caused and contributed to . . . Greyhound's damages."

Pursuant to a pretrial order, Contract Carriers filed a letter—which the trial court treated as, and we consider to be, part of the answer—alleging that Schlagenhauf was "not mentally or physically capable" of driving a bus at the time of the accident.

Contract Carriers and National Lead then petitioned the District Court for an order directing petitioner Schlagenhauf to submit to both mental and physical examinations by one specialist in each of the following fields:

(1) Internal medicine;
(2) Ophthalmology;
(3) Neurology; and
(4) Psychiatry.

For the purpose of offering a choice to the District Court of one specialist in each field, the petition recommended two specialists in internal medicine, ophthalmology, and psychiatry, respectively, and three specialists in neurology—a total of nine physicians. The petition alleged

---

[1] In all the pleadings McCorkhill was joined with Contract Carriers. For simplicity, both will be referred to as Contract Carriers.

that the mental and physical condition of Schlagenhauf was "in controversy" as it had been raised by Contract Carriers' answer to Greyhound's cross-claim. This was supported by a brief of legal authorities and an affidavit of Contract Carriers' attorney stating that Schlagenhauf had seen red lights 10 to 15 seconds before the accident, that another witness had seen the rear lights of the trailer from a distance of three-quarters to one-half mile, and that Schlagenhauf had been involved in a prior accident.

The certified record indicates that petitioner's attorneys filed in the District Court a brief in opposition to this petition asserting, among other things, that "the physical and mental condition of the defendant Robert L. Schlagenhauf is not 'in controversy' herein in the sense that these words are used in Rule 35 of the Federal Rules of Civil Procedure; [and] that good cause has not been shown for the multiple examinations prayed for by the cross-defendant . . . ." [2]

While disposition of this petition was pending, National Lead filed its answer to Greyhound's cross-claim and itself "cross-claimed" against Greyhound and Schlagenhauf for damage to its trailer. The answer asserted generally that Schlagenhauf's negligence proximately caused the accident. The cross-claim additionally alleged that Greyhound and Schlagenhauf were negligent

> "[b]y permitting said bus to be operated over and upon said public highway by the said defendant, Robert L. Schlagenhauf, when both the said Greyhound Corporation and said Robert L. Schlagenhauf knew that the eyes and vision of the said Robert L. Schlagenhauf was [sic] impaired and deficient."

The District Court, on the basis of the petition filed by Contract Carriers, and without any hearing, ordered

---

[2] These contentions were renewed by written "Objections and Brief" at the time the corrected order described in note 3 was entered by the District Court.

Schlagenhauf to submit to nine examinations—one by each of the recommended specialists—despite the fact that the petition clearly requested a total of only four examinations.[3]

Petitioner applied for a writ of mandamus in the Court of Appeals against the respondent, the District Court Judge, seeking to have set aside the order requiring his mental and physical examinations. The Court of Appeals denied mandamus, one judge dissenting, 321 F. 2d 43.

We granted certiorari to review undecided questions concerning the validity and construction of Rule 35. 375 U. S. 983.

## II.

A threshold problem arises due to the fact that this case was in the Court of Appeals on a petition for a writ of mandamus. Although it is not disputed that we have jurisdiction to review the judgment of the Court of Appeals, 28 U. S. C. § 1254 (1) (1958 ed.), respondent urges that the judgment below dismissing the writ be affirmed on the ground that mandamus was not an appropriate remedy.

"The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts [4] has been to confine an inferior court to a lawful

---

[3] After the Court of Appeals denied mandamus, the order was corrected by the District Court to reduce the number of examinations to the four requested. We agree with respondent that the issue of that error has become moot. However, the fact that the District Court ordered nine examinations is not irrelevant, together with all the other circumstances, in the consideration of whether the District Court gave to the petition for mental and physical examinations that discriminating application, which Rule 35 requires. See pp. 119–122, infra.

[4] 28 U. S. C. § 1651 (a) (1958 ed.): "The Supreme Court and all courts established by Act of Congress may issue all writs necessary

exercise of its prescribed jurisdiction . . . ," *Roche* v. *Evaporated Milk Assn.,* 319 U. S. 21, 26.

It is, of course, well settled, that the writ is not to be used as a substitute for appeal, *Ex parte Fahey,* 332 U. S. 258, 259–260, even though hardship may result from delay and perhaps unnecessary trial, *Bankers Life & Casualty Co.* v. *Holland,* 346 U. S. 379, 382–383; *United States Alkali Export Assn.* v. *United States,* 325 U. S. 196, 202–203; *Roche* v. *Evaporated Milk Assn., supra,* at 31. The writ is appropriately issued, however, when there is "usurpation of judicial power" or a clear abuse of discretion, *Bankers Life & Casualty Co.* v. *Holland, supra,* at 383.

Here petitioner's basic allegation was lack of power in a district court to order a mental and physical examination of a defendant. That this issue was substantial is underscored by the fact that the challenged order requiring examination of à defendant appears to be the first of its kind in any reported decision in the federal courts under Rule 35,[5] and we have found only one such modern case in the state courts.[6] The Court of Appeals recognized that it had the power to review on a petition for mandamus the basic, undecided question of whether a district court could order the mental or physical examination of a defendant. We agree that, under these unusual circumstances and in light of the authorities, the Court of Appeals had such power.

The petitioner, however, also alleged that, even if Rule 35 gives a district court power to order mental

---

or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

[5] But see *Dinsel* v. *Pennsylvania R. Co.,* 144 F. Supp. 880 (D. C. W. D. Pa.), where this issue was considered but the District Court, after consideration of the facts, declined to order an examination.

[6] *Harabedian* v. *Superior Court,* 195 Cal. App. 2d 26, 15 Cal. Rptr. 420 (Dist. Ct. App.).

and physical examinations of a defendant in an appropriate case, the District Court here exceeded that power in ordering examinations when petitioner's mental and physical condition was not "in controversy" and no "good cause" was shown, both as expressly required by Rule 35. As we read its opinion, the Court of Appeals reached the "in controversy" issue and determined it adversely to petitioner. 321 F. 2d, at 51. It did not, however, reach the issue of "good cause," apparently considering that it was not appropriate to do so on a petition for mandamus.[7] *Ibid.*

We recognize that in the ordinary situation where the sole issue presented is the district court's determination that "good cause" has been shown for an examination, mandamus is not an appropriate remedy, absent, of course, a clear abuse of discretion. See *Bankers Life & Casualty Co.* v. *Holland, supra,* at 383. Here, however, the petition was properly before the court on a substantial allegation of usurpation of power in ordering any examination of a defendant, an issue of first impression that called for the construction and application of Rule 35 in a new context. The meaning of Rule 35's requirements of "in controversy" and "good cause" also raised issues of first impression. In our view, the Court of Appeals should have also, under these special circumstances, determined the "good cause" issue, so as to avoid piecemeal litigation and to settle new and important problems.

Thus we believe that the Court of Appeals had power to determine all of the issues presented by the petition for mandamus.[8] Normally, wise judicial administration

---

[7] Kiley, J., dissented on this point, concluding that the record disclosed "no adequate basis" for the District Court's exercise of its discretion. 321 F. 2d, at 52.

[8] It is not necessary to determine whether or not a refusal by the Court of Appeals to issue the writ, after consideration of the good-

would counsel remand of the cause to the Court of Appeals to reconsider this issue of "good cause." However, in this instance the issue concerns the construction and application of the Federal Rules of Civil Procedure. It is thus appropriate for us to determine on the merits the issues presented and to formulate the necessary guidelines in this area. See *Van Dusen* v. *Barrack,* 376 U. S. 612. As this Court stated in *Los Angeles Brush Corp.* v. *James,* 272 U. S. 701, 706:

> "[W]e think it clear that where the subject concerns the enforcement of the . . . Rules which by law it is the duty of this Court to formulate and put in force . . . it may . . . deal directly with the District Court . . . ."

See *McCullough* v. *Cosgrave,* 309 U. S. 634.

This is not to say, however, that, following the setting of guidelines in this opinion, any future allegation that the District Court was in error in applying these guidelines to a particular case makes mandamus an appropriate remedy. The writ of mandamus is not to be used when "the most that could be claimed is that the district courts have erred in ruling on matters within their jurisdiction." *Parr* v. *United States,* 351 U. S. 513, 520; see *Bankers Life & Casualty Co.* v. *Holland, supra,* at 382.

### III.

Rule 35 on its face applies to all "parties," which under any normal reading would include a defendant. Petitioner contends, however, that the application of the Rule to a defendant would be an unconstitutional invasion of his privacy, or, at the least, be a modification of substantive rights existing prior to the adoption of the

cause issue, would have been reversible error. The issuance of this extraordinary writ is itself generally a matter of discretion. See *La Buy* v. *Howes Leather Co.,* 352 U. S. 249, 260; *Bankers Life & Casualty Co.* v. *Holland, supra;* 6 Moore, Federal Practice, ¶ 54.10[4] (1953 ed.).

Federal Rules of Civil Procedure and thus beyond the congressional mandate of the Rules Enabling Act.[9]

These same contentions were raised in *Sibbach* v. *Wilson & Co.*, 312 U. S. 1, by a plaintiff in a negligence action who asserted a physical injury as a basis for recovery. The Court, by a closely divided vote, sustained the Rule as there applied. Both the majority and dissenting opinions, however, agreed that Rule 35 could not be assailed on constitutional grounds. *Id.*, at 11–12, 17. The division in the Court was on the issue of whether the Rule was procedural or a modification of substantive rights. The majority held that the Rule was a regulation of procedure and thus within the scope of the Enabling Act—the dissenters deemed it substantive. Petitioner does not challenge the holding in *Sibbach* as applied to plaintiffs. He contends, however, that it should not be extended to defendants. We can see no basis under the *Sibbach* holding for such a distinction. Discovery "is not a one-way proposition." *Hickman* v. *Taylor*, 329 U. S. 495, 507. Issues cannot be resolved by a doctrine of favoring one class of litigants over another.

We recognize that, insofar as reported cases show, this type of discovery in federal courts has been applied solely to plaintiffs, and that some early state cases seem to have proceeded on a theory that a plaintiff who seeks redress for injuries in a court of law thereby "waives" his right to claim the inviolability of his person.[10]

However, it is clear that *Sibbach* was not decided on any "waiver" theory. As Mr. Justice Roberts, for the majority, stated, one of the rights of a person "is the right not to be injured in one's person by another's negligence,

---

[9] 28 U. S. C. § 2072 (1958 ed.), which provides that the Rules "shall not abridge, enlarge or modify any substantive right . . . ."

[10] For a discussion of these cases, see 8 Wigmore, Evidence, § 2220 (McNaughton Rev. ed. 1961). See also 3 Ohlinger's Federal Practice 490 (1964 ed.).

to redress infraction of which the present action was brought." 312 U. S., at 13. For the dissenters, Mr. Justice Frankfurter pointed out that "[o]f course the Rule is compulsive in that the doors of the federal courts otherwise open may be shut to litigants who do not submit to such a physical examination." *Id.*, at 18.

These statements demonstrate the invalidity of any waiver theory. The chain of events leading to an ultimate determination on the merits begins with the injury of the plaintiff, an involuntary act on his part. Seeking court redress is just one step in this chain. If the plaintiff is prevented or deterred from this redress, the loss is thereby forced on him to the same extent as if the defendant were prevented or deterred from defending against the action.

Moreover, the rationalization of *Sibbach* on a waiver theory would mean that a plaintiff has waived a right by exercising his right of access to the federal courts. Such a result might create constitutional problems. Also, if a waiver theory is espoused, problems would arise as to a plaintiff who originally brought his action in a state court (where there was no equivalent of Rule 35) and then has the case removed by the defendant to federal court.

We hold that Rule 35, as applied to either plaintiffs or defendants to an action, is free of constitutional difficulty and is within the scope of the Enabling Act. We therefore agree with the Court of Appeals that the District Court had power to apply Rule 35 to a party defendant in an appropriate case.

## IV.

There remains the issue of the construction of Rule 35. We enter upon determination of this construction with the basic premise "that the deposition-discovery rules are to be accorded a broad and liberal treatment," *Hickman*

v. *Taylor, supra,* at 507, to effectuate their purpose that "civil trials in the federal courts no longer need be carried on in the dark." *Id.,* at 501.

Petitioner contends that even if Rule 35 is to be applied to defendants, which we have determined it must, nevertheless it should not be applied to him as he was not a party in relation to Contract Carriers and National Lead—the movants for the mental and physical examinations—at the time the examinations were sought.[11] The Court of Appeals agreed with petitioner's general legal proposition, holding that the person sought to be examined must be an opposing party *vis-à-vis* the movant (or at least one of them). 321 F. 2d, at 49. While it is clear that the person to be examined must be a party to the case,[12] we are of the view that the Court of Appeals gave an unduly restrictive interpretation to that term. Rule 35 only requires that the person to be examined be a party to the "action," not that he be an opposing party *vis-à-vis* the movant. There is no doubt that Schlagenhauf was a "party" to this "action" by virtue of the original complaint. Therefore, Rule 35 permitted exami-

---

[11] We have already pointed out, pp. 106–108, *supra,* that at the time of the first petition, Schlagenhauf was a named defendant in the original complaint but was not a named cross-defendant in any pleadings filed by Contract Carriers or National Lead.

[12] Although petitioner was an agent of Greyhound, he was himself a party to the action. He is to be distinguished from one who is not a party but is, for example, merely the agent of a party. This is not only clear in the wording of the Rule, but is reinforced by the fact that this Court has never approved the Advisory Committee's proposed amendment to Rule 35 which would include within the scope of the Rule "an agent or a person in the custody or under the legal control of a party." Advisory Committee on Rules for Civil Procedure, Report of Proposed Amendments, 41–43 (1955). It is not now necessary to determine to what extent, if any, the term "party" includes one who is a "real party in interest" although not a named party to the action. Cf. *Beach* v. *Beach,* 72 App. D. C. 318, 114 F. 2d 479.

nation of him (a party defendant) upon petition of Contract Carriers and National Lead (codefendants), provided, of course, that the other requirements of the Rule were met. Insistence that the movant have filed a pleading against the person to be examined would have the undesirable result of an unnecessary proliferation of cross-claims and counterclaims and would not be in keeping with the aims of a liberal, nontechnical application of the Federal Rules. See *Hickman* v. *Taylor, supra,* at 500–501.

While the Court of Appeals held that petitioner was not a party *vis-à-vis* National Lead or Contract Carriers at the time the examinations were first sought, it went on to hold that he had become a party *vis-à-vis* National Lead by the time of a second order entered by the District Court and thus was a party within its rule. This second order, identical in all material respects with the first, was entered on the basis of supplementary petitions filed by National Lead and Contract Carriers. These petitions gave no new basis for the examinations, except for the allegation that petitioner's mental and physical condition had been additionally put in controversy by the National Lead answer and cross-claim, which had been filed subsequent to the first petition for examinations. Although the filing of the petition for mandamus intervened between these two orders, we accept, for purposes of this opinion, the determination of the Court of Appeals that this second order was the one before it [13] and agree that petitioner was clearly a party at this juncture under any test.

Petitioner next contends that his mental or physical condition was not "in controversy" and "good cause" was not shown for the examinations, both as required by the express terms of Rule 35.

---

[13] As stated in note 3, *supra,* thereafter a third order was entered which reduced the number of examinations to the four requested.

The discovery devices sanctioned by Part V of the Federal Rules include the taking of oral and written depositions (Rules 26–32), interrogatories to parties (Rule 33), production of documents (Rule 34), and physical and mental examinations of parties (Rule 35). The scope of discovery in each instance is limited by Rule 26 (b)'s provision that "the deponent may be examined regarding any matter, not privileged, which is *relevant to the subject matter involved* in the pending action" (emphasis added), and by the provisions of Rule 30 (b) permitting the district court, upon motion, to limit, terminate, or otherwise control the use of discovery devices so as to prevent either their use in bad faith or undue "annoyance, embarrassment, or oppression."

It is notable, however, that in none of the other discovery provisions is there a restriction that the matter be "in controversy;" and only in Rule 34 is there Rule 35's requirement that the movant affirmatively demonstrate "good cause."

This additional requirement of "good cause" was reviewed by Chief Judge Sobeloff in *Guilford National Bank* v. *Southern R. Co.,* 297 F. 2d 921, 924 (C. A. 4th Cir.), in the following words:

"Subject to . . . [the restrictions of Rules 26 (b) and 30 (b) and (d)], a party may take depositions and serve interrogatories without prior sanction of the court or even its knowledge of what the party is doing. Only if a deponent refuses to answer in the belief that the question is irrelevant, can the moving party request under Rule 37 a court order requiring an answer.

"Significantly, this freedom of action, afforded a party who resorts to depositions and interrogatories, is not granted to one proceeding under Rules 34 and 35. Instead, the court must decide as an initial matter, and in every case, whether the motion requesting

118

production of documents or the making of a physical or mental examination adequately demonstrates good cause. The specific requirement of good cause would be meaningless if good cause could be sufficiently established by merely showing that the desired materials are relevant, for the relevancy standard has already been imposed by Rule 26 (b). Thus, by adding the words '. . . good cause . . . ,' the Rules indicate that there must be greater showing of need under Rules 34 and 35 than under the other discovery rules."

The courts of appeals in other cases [14] have also recognized that Rule 34's good-cause requirement is not a mere formality, but is a plainly expressed limitation on the use of that Rule. This is obviously true as to the "in controversy" and "good cause" requirements of Rule 35. They are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination. Obviously, what may be good cause for one type of examination may not be so for another. The ability of the movant to obtain the desired information by other means is also relevant.

Rule 35, therefore, requires discriminating application by the trial judge, who must decide, as an initial matter in every case, whether the party requesting a mental or physical examination or examinations has adequately demonstrated the existence of the Rule's requirements

---

[14] *Tauger* v. *Chicago, R. I. & Pac. R. Co.*, 216 F. 2d 501 (C. A. 7th Cir.); *Martin* v. *Capital Transit Co.*, 83 U. S. App. D. C. 239, 170 F. 2d 811; see *Mitchell* v. *Bass*, 252 F. 2d 513 (C. A. 8th Cir.); *Williams* v. *Continental Oil Co.*, 215 F. 2d 4 (C. A. 10th Cir.); *Alltmont* v. *United States*, 177 F. 2d 971 (C. A. 3d Cir.).

of "in controversy" and "good cause," which requirements, as the Court of Appeals in this case itself recognized, are necessarily related. 321 F. 2d, at 51. This does not, of course, mean that the movant must prove his case on the merits in order to meet the requirements for a mental or physical examination. Nor does it mean that an evidentiary hearing is required in all cases. This may be necessary in some cases, but in other cases the showing could be made by affidavits or other usual methods short of a hearing. It does mean, though, that the movant must produce sufficient information, by whatever means, so that the district judge can fulfill his function mandated by the Rule.

Of course, there are situations where the pleadings alone are sufficient to meet these requirements. A plaintiff in a negligence action who asserts mental or physical injury, cf. *Sibbach* v. *Wilson & Co., supra,* places that mental or physical injury clearly in controversy and provides the defendant with good cause for an examination to determine the existence and extent of such asserted injury. This is not only true as to a plaintiff, but applies equally to a defendant who asserts his mental or physical condition as a defense to a claim, such as, for example, where insanity is asserted as a defense to a divorce action. See *Richardson* v. *Richardson,* 124 Colo. 240, 236 P. 2d 121. See also *Roberts* v. *Roberts,* 198 Md. 299, 82 A. 2d 120; Discovery as to Mental Condition Before Trial, 18 J. Am. Jud. Soc. 47 (1934).

Here, however, Schlagenhauf did not assert his mental or physical condition either in support of or in defense of a claim. His condition was sought to be placed in issue by other parties. Thus, under the principles discussed above, Rule 35 required that these parties make an affirmative showing that petitioner's mental or physical condition was in controversy and that there was good cause for

the examinations requested. This, the record plainly shows, they failed to do.

The only allegations in the pleadings relating to this subject were the general conclusory statement in Contract Carriers' answer to the cross-claim that "Schlagenhauf was not mentally or physically capable of operating" the bus at the time of the accident and the limited allegation in National Lead's cross-claim that, at the time of the accident, "the eyes and vision of . . . Schlagenhauf was [sic] impaired and deficient."

The attorney's affidavit attached to the petition for the examinations provided:

"That . . . Schlagenhauf, in his deposition . . . admitted that he saw red lights for 10 to 15 seconds prior to a collision with a semi-tractor trailer unit and yet drove his vehicle on without reducing speed and without altering the course thereof.

"The only eye-witness to this accident known to this affiant . . . testified that immediately prior to the impact between the bus and truck that he had also been approaching the truck from the rear and that he had clearly seen the lights of the truck for a distance of three-quarters to one-half mile to the rear thereof.

". . . Schlagenhauf has admitted in his deposition . . . that he was involved in a [prior] similar type rear end collision . . . ."

This record cannot support even the corrected order which required one examination in each of the four specialties of internal medicine, ophthalmology, neurology, and psychiatry.[15] Nothing in the pleadings or affidavit would afford a basis for a belief that Schlagenhauf was suffering from a mental or neurological illness warranting wide-ranging psychiatric or neurological exami-

[15] See note 3, supra.

nations. Nor is there anything stated justifying the broad internal medicine examination.[16]

The only specific allegation made in support of the four examinations ordered was that the "eyes and vision" of Schlagenhauf were impaired. Considering this in conjunction with the affidavit, we would be hesitant to set aside a visual examination if it had been the only one ordered.[17] However, as the case must be remanded to the District Court because of the other examinations ordered, it would be appropriate for the District Judge to reconsider also this order in light of the guidelines set forth in this opinion.

The Federal Rules of Civil Procedure should be liberally construed, but they should not be expanded by disregarding plainly expressed limitations. The "good cause" and "in controversy" requirements of Rule 35 make it very apparent that sweeping examinations of a party who has not affirmatively put into issue his own mental or physical condition are not to be automatically ordered merely because the person has been involved in an accident—or, as in this case, two accidents—and a general charge of negligence is lodged. Mental and physical examinations are only to be ordered upon a discriminating application by the district judge of the limitations prescribed by the Rule. To hold otherwise would mean

---

[16] Moreover, it seems clear that there was no compliance with Rule 35's requirement that the trial judge delineate the "conditions, and scope" of the examinations. Here the examinations were ordered in very broad, general areas. The internal medicine examination might for example, at the instance of the movant or its recommended physician extend to such things as blood tests, electrocardiograms, gastro-intestinal and other X-ray examinations. It is hard to conceive how some of these could be relevant under any possible theory of the case.

[17] Cf. *Harabedian* v. *Superior Court*, 195 Cal. App. 2d 26, 15 Cal. Rptr. 420 (Dist. Ct. App.). This case should be compared with *Laubscher* v. *Blake*, 7 Cal. App. 2d 376, 46 P. 2d 836 (Dist. Ct. App.).

that such examinations could be ordered routinely in automobile accident cases.[18] The plain language of Rule 35 precludes such an untoward result.

Accordingly, the judgment of the Court of Appeals is vacated and the case remanded to the District Court to reconsider the examination order in light of the guidelines herein formulated and for further proceedings in conformity with this opinion.

*Vacated and remanded.*

MR. JUSTICE BLACK, with whom MR. JUSTICE CLARK joins, concurring in part and dissenting in part.

I agree with the Court that under Rule 35 (a): (1) a plaintiff and a defendant have precisely the same right to obtain a court order for physical or mental examination of the other party or parties to a lawsuit; (2) before obtaining such an order it must be shown that physical or mental health is "in controversy" as to a relevant and material issue in the case; and (3) such an order "may be made only on motion for good cause shown" after "notice to the party to be examined and to all other parties." Unlike the Court, however, I think this record plainly shows that there *was* a controversy as to Schlagenhauf's mental and physical health and that "good cause" *was* shown for a physical and mental examination of him, unless failure to deny the allegations amounted to an admission that they were true. While the papers filed in connection with this motion were informal, there can be no doubt that other parties in the lawsuit specifically

---

[18] From July 1, 1963, through June 30, 1964, almost 10,000 motor vehicle personal injury cases were filed in the federal district courts. Administrative Office of the United States Courts, Annual Report of the Director, C2 (1964). In the Nation at large during 1963, there were approximately 11,500,000 automobile accidents, involving approximately 20,000,000 drivers. National Safety Council, Accident Facts, 40 (1964 ed.).

and unequivocally charged that Schlagenhauf was not mentally or physically capable of operating a motor bus at the time of the collision, and that his negligent operation of the bus caused the resulting injuries and damage. The other parties filed an affidavit based on depositions of Schlagenhauf and a witness stating that Schlagenhauf, driving the bus along a four-lane highway in what apparently was good weather, had come upon a tractor-trailer down the road in front of him. The tractor-trailer was displaying red lights visible for at least half a mile, and Schlagenhauf admitted seeing them. Yet after coming in sight of the vehicle Schlagenhauf continued driving the bus in a straight line, without slowing down, for a full 10 or 15 seconds until the bus struck the tractor-trailer. Schlagenhauf admitted also that he had been involved in the very same kind of accident once before. Schlagenhauf has never at any time in the proceedings denied and he does not even now deny the charges that his mental and physical health and his eyes and vision were impaired and deficient.

In a collision case like this one, evidence concerning very bad eyesight or impaired mental or physical health which may affect the ability to drive is obviously of the highest relevance. It is equally obvious, I think, that when a vehicle continues down an open road and smashes into a truck in front of it although the truck is in plain sight and there is ample time and room to avoid collision, the chances are good that the driver has some physical, mental or moral defect. When such a thing happens twice, one is even more likely to ask, "What is the matter with that driver? Is he blind or crazy?" Plainly the allegations of the other parties were relevant and put the question of Schlagenhauf's health and vision "in controversy." The Court nevertheless holds that these charges were not a sufficient basis on which to rest a court-ordered examination of Schlagenhauf. It says with reference to the

charges of impaired physical or mental health that the charges are "conclusory." I had not thought there was anything strange about pleadings being "conclusory"— that is their function, at least since modern rules of procedure have attempted to substitute simple pleadings for the complicated and redundant ones which long kept the common-law courts in disrepute. I therefore cannot agree that the charges about Schlagenhauf's health and vision were not sufficient upon which to base an order under Rule 35 (a), particularly since he was a party who raised every technical objection to being required to subject himself to an examination but never once denied that his health and vision were bad. In these circumstances the allegations here should be more than enough to show probable cause to justify a court order requiring some kind of physical and mental examination.

While I dissent from the Court's holding that no examination at all was justified by this record, I agree that the order was broader than required. I do so in part because of the arguments made in the dissent in *Sibbach* v. *Wilson & Co.*, 312 U. S. 1, 16, that physical examinations of people should be ordered by courts only when clearly and unequivocally required by law. By the same reasoning I think the courts should exercise great restraint in administering such a law once it has been enacted, as *Sibbach* held it had been when Rule 35 was approved. For this reason I agree to the Court's judgment remanding the case in order to give Schlagenhauf, if he now chooses, and the other parties an opportunity to produce any relevant facts to aid the District Judge in refashioning an order which will be neither too broad nor too narrow to give all the parties the rights which are theirs.

MR. JUSTICE DOUGLAS, dissenting in part.

While I join the Court in reversing this judgment, I would, on the remand, deny all relief asked under Rule 35.

I do not suppose there is any licensed driver of a car or a truck who does not suffer from some ailment, whether it be ulcers, bad eyesight, abnormal blood pressure, deafness, liver malfunction, bursitis, rheumatism, or what not. If he or she is turned over to the plaintiff's doctors and psychoanalysts to discover the cause of the mishap, the door will be opened for grave miscarriages of justice. When the defendant's doctors examine plaintiff, they are normally interested only in answering a single question: did plaintiff in fact sustain the specific injuries claimed? But plaintiff's doctors will naturally be inclined to go on a fishing expedition in search of *anything* which will tend to prove that the defendant was unfit to perform the acts which resulted in the plaintiff's injury. And a doctor for a fee can easily discover something wrong with any patient—a condition that in prejudiced medical eyes might have caused the accident. Once defendants are turned over to medical or psychiatric clinics for an analysis of their physical well-being and the condition of their psyche, the effective trial will be held there and not before the jury. There are no lawyers in those clinics to stop the doctor from probing this organ or that one, to halt a further inquiry, to object to a line of questioning. And there is no judge to sit as arbiter. The doctor or the psychiatrist has a holiday in the privacy of his office. The defendant is at the doctor's (or psychiatrist's) mercy; and his report may either overawe or confuse the jury and prevent a fair trial.

The Court in *Sibbach* v. *Wilson & Co.*, 312 U. S. 1, was divided when it came to submission of a plaintiff to a compulsory medical examination. The division was not over the constitutional power to require it but only as to whether Congress had authorized a rule to that effect. I accept that point as one governed by *stare decisis*. But no decision that when a *plaintiff* claims damages his "mental or physical condition" is "in controversy," within

the meaning of Rule 35, governs the present case. The *plaintiff* by suing puts those issues "in controversy." A plaintiff, by coming into court and asserting that he has suffered an injury at the hands of the defendant, has thereby put his physical or mental condition "in controversy." Thus it may be only fair to provide that he may not be permitted to recover his judgment unless he permits an inquiry into the true nature of his condition.

A defendant's physical and mental condition is not, however, immediately and directly "in controversy" in a negligence suit. The issue is whether he was negligent. His physical or mental condition may of course be relevant to that issue; and he may be questioned concerning it and various methods of discovery can be used. But I balk at saying those issues are "in controversy" within the meaning of Rule 35 in every negligence suit or that they may be put "in controversy" by the addition of a few words in the complaint. As I have said, *Sibbach* proceeded on the basis that a plaintiff who seeks a decree of a federal court for his damages may not conceal or make difficult the proof of the claim he makes. The defendant, however, is dragged there; and to find "waiver" of the "inviolability of the person" (*Union Pacific R. Co.* v. *Botsford,* 141 U. S. 250, 252) is beyond reality.

Neither the Court nor Congress up to today has determined that any person whose physical or mental condition is brought into question during some lawsuit must surrender his right to keep his person inviolate. Congress did, according to *Sibbach,* require a plaintiff to choose between his privacy and his purse; but before today it has not been thought that any other "party" had lost this historic immunity. Congress and this Court can authorize such a rule. But a rule suited to purposes of discovery against defendants must be carefully drawn in light of the great potential of blackmail.

The Advisory Committee on Rules for Civil Procedure in its October 1955 Report of Proposed Amendments to the Rules of Civil Procedure for the United States District Courts proposed that Rule 35 be broadened to include situations where the mental or physical condition or "the blood relationship" of a party, or "of an agent or a person in the custody or under the legal control of a party," is "in controversy." We did not adopt that Rule in its broadened form. But concededly the issue with which we are now concerned was not exposed. It needs, in my opinion, full exposure so that if the Rule is to be applied to defendants as well as to plaintiffs, safeguards can be provided in the Rule itself against the awful risks of blackmail that exist in a Rule of that breadth.

This is a problem that we should refer to the Civil Rules Committee of the Judicial Conference so that if medical and psychiatric clinics are to be used in discovery against defendants—whether in negligence, libel, or contract cases—the standards and conditions will be discriminating and precise. If the bus driver in the instant case were not a defendant, could he be examined by doctors and psychiatrists? See *Kropp* v. *General Dynamics Corp.*, 202 F. Supp. 207; 13 Buffalo L. Rev. 623 (1964). Lines must in time be drawn; and I think the new Civil Rules Committee is better equipped than we are to draw them initially.

Mr. Justice Harlan, dissenting.

In my view the Court's holding that mandamus lies in this case cannot be squared with the course of decisions to which the majority at the threshold pays lip service. *Ante,* pp. 109–110. As the Court recognizes, mandamus, like the other extraordinary writs, is available to correct only those decisions of inferior courts which involve a "usurpation of judicial power" or, what is tantamount

thereto, "a clear abuse of discretion"; such a writ "is not to be used as a substitute for appeal." *Ibid.*

Mandamus is found to be an appropriate remedy in this instance, however, because (1) petitioner's challenge was based on an asserted lack of power in the District Court to issue the examination order, and (2) that being so, the Court of Appeals had the right also to inquire into the application of the "in controversy" and "good cause" requirements of Rule 35 (a), particularly since those issues, like the question of "power," were matters of "first impression" which in "these special circumstances" should be determined by the Court of Appeals "so as to avoid piecemeal litigation and to settle new and important problems." *Ante,* p. 111.

For me this reasoning is unacceptable. Of course a court of appeals when confronted with a substantial challenge to the power of a district court to act in the premises may proceed to examine that question without awaiting its embodiment in a final judgment, as the Court of Appeals did here by issuing an order to show cause why a writ of mandamus should not issue. But once it is determined that the challenged power did exist, and that the district court acted within the limit of that power, an extraordinary writ should be denied. I know of no case which suggests that a court of appeals' right to consider such a question at an interlocutory stage of the litigation also draws to the court the right to consider other questions—here the "in controversy" and "good cause" issues—which otherwise would not be examinable upon a petition for an extraordinary writ. Indeed, were an extraordinary writ to issue following a determination that the district court lacked power, that would put an end to the litigation and these questions would never be reached. And, as the Court correctly states, the fact that "hardship may result from delay and perhaps unneces-

sary trial," *ante,* p. 110, is not a factor that makes for the issuance of such a writ.

Manifestly, today's procedural holding, when stripped of its sugar-coating, is born of the Court's belief that the petitioner should not be exposed to the rigors of these examinations before the proper "guidelines" have been established by this tribunal. Understandable as that point of view may be, it can only be indulged at the expense of making a deep inroad into the firmly established federal policy which, with narrow exceptions,[1] permits appellate review only of the final judgments of district courts. To be sure the Court is at pains to warn that what is done today puts an end to future "interlocutory" review of Rule 35 questions. *Ante,* p. 112. Nevertheless, I find it hard to escape the conclusion that this decision may open the door to the extraordinary writs being used to test any question of "first impression," if it can be geared to an alleged lack of "power" in the district court. As such, it seems to me out of keeping with the rule of "finality," with respect to which Congress, wisely I think, has been willing to make only cautious exceptions.[2]

The Court of Appeals having correctly concluded, as this Court now holds and as I agree, that the District Court had power to order the physical and mental examinations of this petitioner, and since I believe that there was no clear abuse of discretion in its so acting, I think the lower court was quite right in denying mandamus, and I would affirm its judgment on that basis.

---

[1] See, *e. g.,* 28 U. S. C. §§ 1292 (a)(1), (b) (1958 ed.).

[2] See note 1, *supra.*