**NATIONAL UTILITY SERVICE, INC.,
Plaintiff-Appellant,**

v.

**NORTHWESTERN STEEL AND WIRE
CO., Defendant-Appellee.**

**No. 17795.**

United States Court of Appeals,
Seventh Circuit.

May 5, 1970.

Rehearing Denied May 22, 1970.

Thomas A. Keegan, Keegan & Gosdick, Rockford, Ill., John M. Foley, New York City, for plaintiff-appellant; Foley, Hickey, Gilbert & Currie, New York City, of counsel.

Hamilton Smith, James E. Betke, William G. Migely, Chicago, Ill., for defendant-appellee; McDermott, Will & Emery, Chicago, Ill., of counsel.

Before KILEY, CUMMINGS, and KERNER, Circuit Judges.

CUMMINGS, Circuit Judge.

This is a breach of contract action brought by National Utility Service, Inc., a New York corporation, against Northwestern Steel and Wire Company of Sterling, Illinois. In 1964, the parties executed a 5-year contract providing that plaintiff would make a technical investigation and analysis of the various factors in defendant's gas and utility rates and advise when reductions could be obtained. Defendant was obligated to pay a retainer fee of $1,000 and 50% of any savings secured by plaintiff. The complaint sought a judgment of $1,037,500 on the ground that pursuant to plaintiff's recommendations, defendant was obtaining $2,075,000 savings in the cost of gas purchased from Northern Illinois Gas Company from 1965 to 1970.

Defendant's amended answer denied that plaintiff made the required investigation and analysis, or that it made recommendations to defendant with respect to the gas rates defendant paid. The third affirmative defense charged fraud in that plaintiff "did not possess the qualifications it represented it had, did not intend to conduct the technical investigation and analysis it represented it would, and did not intend to furnish the reports it represented it would."

Under Rule 34 of the Federal Rules of Civil Procedure, the defendant filed a motion for the production of certain documents supported by an affidavit of counsel. The district court granted that motion in part. On rehearing, the broad production order was somewhat limited. The final production order confined the dates of the documents to the period from January 1, 1962, to February 19, 1969, and also provided "Defendant shall not disclose names of plaintiff's customers or details of plaintiff's relationship with them without further order of this Court." Plaintiff refused to comply with any portion of the order, and the district court struck the complaint. This appeal followed.

On appeal, plaintiff contends that it should not have to produce the following nine categories of documents:

"2. Writings showing, as to each person employed by National Utility as a rate analyst, posting clerk, checking clerk, researcher or set-up man, since January 1, 1962:

(a) The name of the employee;

(b) The date of his or her employment;

(c) The capacity in which he or she was first employed;

(d) The changes in that capacity and the dates thereof.

"3. Writings showing as to each person employed by National Utility as a salesman:

(a) The name of the employee;

(b) The date of his or her employment;

(c) The capacity in which he or she was first employed;

(d) The changes in that capacity and the dates thereof.

"4. All writings relating to gas utility rates in the states of Illinois, Indiana, Michigan, Wisconsin, Iowa, Missouri and Kentucky, which serve as sourse materials to National Utility.

"12. All writings reflecting technical investigations and analyses by National Utility of the various factors in the rates in any of its customers.

"13. All analysis sheets prepared by National Utility.

"14. All writings in which National Utility recommended to any customer any course of action that would or might result in savings to the customer.

"18. All writings showing the names and last known addresses of all persons employed by National Utility as secretaries.

"19. All writings relating to customers of National Utility who are or who have also been customers of Northern Illinois Gas.

"20. Writings showing the names and last known addresses of officers of National Utility who are no longer employed by National Utility."

■■ Plaintiff first objects that the attorney's affidavit in support of defendant's production motion did not state *facts within the personal knowledge of the affiant and therefore requisite "good* cause" for discovery under Rule 34 could not be established. Whether advanced as a general proposition of law or a statement about the adequacy of the showing in this case, the contention is without merit.

■ No set requirements or formalities are imposed for the establishment of good cause. 4 Moore's Federal Practice ¶ 34.08 (1969). It is clear that a production motion may be verified in any reasonable manner demonstrating that the material sought is relevant to the issues and that there is some good reason for enlisting the power of the court in uncovering that information. See Schlagenhauf v. Holder, 379 U.S. 104, 118–119, 85 S.Ct. 234, 13 L.Ed.2d 152. The judicially imposed requirement that "special circumstances" be demonstrated no more specifies the method by which those exigencies may be shown than it constricts the breadth of the "special circumstances" justifying discovery. Cf. Hanley v. James McHugh Construction Co., 419 F.2d 955 (7th Cir. 1969). Good cause for discovery may be apparent from the pleadings alone (Schlagenhauf v. Holder, *supra*, 379 U.S. at p. 120, 85 S.Ct. 234) or from the motion itself without any accompanying affidavit where the records and pleadings warrant. *E. g.*, Goosman v. A. Duie Pyle, Inc., 320 F.2d 45 (4th Cir. 1963); Rekeweg v. Federal Mutual Ins. Co., 27 F.R.D. 431 (N.D.Ind.1961).

In the present case, the motion for discovery was accompanied by an affidavit of defendant's attorney which set forth the plaintiff's exclusive possession of the documents and information sought and defendant's inability to obtain the information informally or through independent means. In addition, the affidavit explained the purposes to which the plaintiff's documents and information related, the responses and disclosures anticipated, and their materiality and relevance to the defenses contained in the Answer. Plaintiff contends, however, that the entire affidavit should be discounted and discovery denied because of asserted contradictions between the

facts averred and pretrial testimony of several of defendant's officials and the salesman who negotiated the contract between the two litigants. Assuming, *arguendo*, that such factual contradictions might undermine an affidavit to such an extent as to render a court's finding of good cause or relevancy an abuse of discretion, nevertheless, those portions of the record cited to this Court fail to disclose any salient discrepancies or contradictions which would support such a result. The depositions neither contradict the affidavit nor undermine its showing of good cause.

■ We turn now to consider the adequacy of the showing of good cause as it applies to the specific set of documents. The affidavit of defendant's counsel supporting the motion asserts that the documents in categories 2 and 3 "relate directly to the question of whether [plaintiff] National Utility had the technical competence it said it had." Defendant thus hoped to substantiate its defense of fraud and misrepresentation by using the promotions of plaintiff's employees to refute its claims of expertness. In particular, defendant expected to find that employees with little or no technical competence were rapidly advanced to levels of claimed expertise, therefore showing that plaintiff either lacked the necessary competence because of deficient personnel or that no special expertise was required to perform the services it actually rendered. The information contained in the documents sought is, we feel, relevant to the material issues of fraud. The inability of the defendant otherwise to procure this information supports the conclusion of the trial judge that good cause had been shown for the discovery of the documents in categories 2 and 3. The scope of the order is, however, excessively broad and burdensome in the manner in which it accomplishes the disclosure. The rationale supporting disclosure focuses upon the competence and experience of rate analysts and researchers for whom the claims of competence might, if erroneous, constitute fraudulent representations. No showing has been made of the need for disclosure of documents pertaining to those who at no time occupied such positions of importance and apparent expertise. Hence, the documents to be produced in categories 2 and 3 should be limited by requiring production only as to those employees who occupied positions of rate analyst or researcher since January 1, 1962.

■ Defendant supports its claim to the discovery of the category 4 documents on the ground that these items will tend to disprove the representations contained in plaintiff's brochure of special information and comparative techniques used to facilitate rate analysis. Defendant is, to be sure, entitled to discovery of documents tending to support or disprove the rendition of any unique service by plaintiff as claimed in the brochure. While appropriate in part, the court's order, however, contemplated the discovery of documents not justified by the showing of good cause and imposed an undue burden upon plaintiff at this early stage in the proceedings. The category 4 documents subject to production should therefore be limited to the gas and utility rates in the regions of Illinois in which defendant actually operates. In addition, defendant is entitled to the production of any other such documents which were in fact relied upon by plaintiff in its analysis of defendant's rates.

■ Defendant also asserts that the documents in categorites 12, 13, and 14 are needed to establish its fraud defense that the plaintiff was incapable of making a technical investigation and analysis of rates and indeed neither made such an investigation in this case nor recommended actions that resulted in savings. Specifically, these documents were expected to disclose a "pattern of fraud corroborating a specific fraud in connection with Northwestern." Such inquiries might be proper at some later point in the proceedings when a more persuasive foundation may be shown of fraudulent conduct vis-à-vis analysis of defendant's own rates. The present pos-

ture of the case does not justify such sweeping discovery of documents. The order of production for documents must be modified to confine the subject matter to the rate analysis of defendant which is the subject of this case.

 Defendant claims that the documents comprising categories 18, 19, and 20 are all needed to elicit the names of potential witnesses. While the names of persons reasonably believed to hold knowledge of relevant facts may be obtained through discovery proceedings, the documents sought here do not entirely conform to that purpose and lack the necessary showing of good cause required under Rule 34. First, such information may be sought through deposition or interrogatories rather than the production of such all-encompassing classes of documents. Moreover, even though the production of documents might provide a proper channel by which such information could be obtained, the instant categories are so broadly drawn that they include documents for which no showing of relevance, much less need, has been made. Neither the names of other customers nor of the plaintiff's secretaries are particularly germane to the subject matter of the case, and there has been no showing of any reasonable possibility that these individuals could provide material information on plaintiff's treatment of defendant's rates. The production order issued pursuant to Rule 34 must therefore be limited to cover only those documents in category 20 pertaining to the subject matter of this controversy. The protective order entered below on February 19, 1969, barring the disclosure of customers' names and business relationhips with plaintiff is therefore unnecessary. The order may be reinstated should defendant subsequently justify discovery of this information through deposition or interrogatory.

Plaintiff has also urged that discovery was not proper in this instance because the customer lists, analyses, and recommendations to customers are "confidential" trade secrets, and production was a clear abuse of discretion. Trade secrets are not privileged, and plaintiff has no absolute right to refuse to divulge the information sought on those grounds. Natta v. Zletz, 405 F.2d 99, 101 (7th Cir. 1968). Here the very outcome of the litigation may well turn upon the existence and use of such analytical devices and special rate information as are now claimed to be immune from discovery. Plaintiff may not simultaneously contend that such secrets exist and base a suit upon them, and nevertheless preclude any accurate determination of the truth of those claims by the very court which it expects to grant relief.*

We have considered the other contentions raised by plaintiff and find them without merit. The order striking the complaint is vacated and the cause is remanded for the entry of a new production order consistent with the limitations expressed in this opinion.

Reversed and remanded.

---

* Our conclusion that the material claimed as trade secrets is discoverable does not preclude a motion by plaintiff upon remand for a protective order from the district court under Rule 30(b). Cf. Natta v. Zletz, 405 F.2d 99, 101 (7th Cir. 1968).