**In re Smith**

*David W. Swanson*, for minor children.
*Thomas E. Africa*, for respondents.
*William R. Mervine*, for Children Services.

WOLFE, *P.J.*, July 11, 1979—This case is again before us on motion of Children Services of Warren County for an examination of the parents of the minor children, Melvin Smith, Jr. and Melody Smith, to wit, Melvin Ned Smith and Mary Lou Smith to submit to a mental examination pursuant to Pa.R.C.P. 4010. The attorney for the children has joined in the motion.

Counsel for respondents-parents opposes the examination arguing that it would be in violation of respondents' right to privacy as guaranteed by the Constitution of the United States and the Constitution of the Commonwealth of Pennsylvania.

We believe a brief history of the case must be reviewed before a determination of the issue may be made. On March 2, 1977, a petition was presented to the court pursuant to the Juvenile Act of December 6, 1972, P.L. 333, sec. 1, 11 P.S. §50-101 et-seq. [see now Judicial Code of July 9, 1976, P.L. 586, 42 Pa.C.S.A. §6301 et seq.], alleging the minor children were believed to be without proper parental care and should be considered by the court as deprived children and a prayer for relief that the children be temporarily placed in the custody of Children Services. On March 4, 1977, both respondents signed a consent decree authorizing the children to be temporarily placed in the custody of Children Services and hence they have been placed in a foster home since that date. Subsequently respondents have petitioned for the return of the children to their home and after a full, evidentiary hearing without the children being represented by counsel we entered an order accelerating the home visitations because we concluded at that time the parental abilities of respondents had improved

and the home environment had improved to the point the children would not be subjected to any danger. Thereafter counsel for the children was appointed and a subsequent hearing has been scheduled for the children's counsel to examine various witnesses whom he feels necessary in performing his duties to ascertain what may be the best interest of the children at this time as to their living accommodations and the ability of respondents to fill their parental duties.

Petitioners propose that Dr. Charles H. Steinmeyer, a clinical psychologist, examine the parents to the end that the court may be assisted in determining if the parents possess the ability and mental condition to provide minimum care for their children. The parents oppose the examination arguing it is an unconstitutional invasion of their right of privacy.

Our first observation is that we are not entirely satisfied that the Rules of Civil Procedure are applicable to juvenile proceedings pursuant to the Juvenile Act. Admittedly there are no separate rules applicable or governing the Juvenile Act such as the Orphan Court Rules but, nonetheless, the Juvenile Act is not generally considered to be a civil proceeding. Notwithstanding we cannot accept petitioners' position that Pa.R.C.P. 1040 is appropriate. Our interpretation of this rule is that it permits a mental or physical examination of a party, or of a person in the custody or under the legal control of a party when the mental or physical condition is in controversy. Our review of the cases leads us to the conclusion that the purpose of this rule is to appraise the other party to a civil suit as to the extent of claimed mental or physical injury incurred to

prevent misrepresentations and frauds: Schlagenhauf v. Holder, 379 U.S. 104, 85 S.Ct. 234 (1964). The Pennsylvania rule is fashioned after Federal R.C.P. 35(a) and has withstood constitutional challenge. We believe rightly so because if a party brings a suit alleging injury against the defendant the defendant should be permitted to enter a knowledgeable defense so that the fact-finders have the true facts before them. Further, we believe when a party brings an action he waives any right of privacy he may have to such an examination. In the instant case respondents have not commenced a civil action seeking damages but rather filed a petition for the return of their children to respondents' home which is opposed by petitioners on the grounds that respondents are still not in a position to give minimal care to them.

We believe the designation of "mental examination" is a misnomer in this case. Petitioner is not, in effect, seeking a mental examination of respondents but rather an interview by a qualified psychologist to determine their thoughts and ideas and their reactions to various forces that could adversely affect the growth and development of their children. Strictly speaking this is not an examination of the parents where the parents have voluntarily, for their own benefit, sought out professional personnel and entered into confidential communications with him. We do not believe there is any invasion of personal rights of respondents who have asked the judicial process to return their children to them when their ability as parents is in issue. We believe the request is reasonable and should be a condition if sufficient reasons exist for such an interview.

Respondents rely upon the recent and guiding case of In re "B," 482 Pa. 471, 481, 394 A. 2d 419 (1978). Therein the court reviewed at length the issue of confidential communications to a staff psychiatrist and the issue of privacy. Contrary to respondents' position the right of privacy is not bottomed in the Constitution of the United States nor the Constitution of Pennsylvania.

"While no specific guarantee of a right of privacy is to be found in the Constitution of the United States, the U.S. Supreme Court has said that zones of privacy are created by the more specific constitutional guarantees and governmental intrusion into these zones is thereby limited. [Citations omitted]. This right of privacy is a fundamental one, said to be a right older even than the Bill of Rights [citations omitted]. As stated by Mr. Justice Douglas in his dissenting opinion in Poe v. Ullman, 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed. 2d 989 (1961), the constitutionally protected right of privacy emanates from the totality of the constitutional scheme under which we live. Also, it has been said that the roots of the right may be found in the penumbra of various specific constitutional provisions such as the First Amendment's guarantee of freedom of speech and press. [Citations omitted]."

Thus, this language from In re: "B," supra, which specifically held that the disclosure of information "revealed in the context of a psychotherapist-patient relationship has deeper roots than the Pennsylvania doctor-patient privilege statute, and that the patient's right to prevent disclosure of such information is constitutionally based."

We note that the court speaks of a "doctor-patient" status.

In the instant case there is no such status of

doctor-patient or any other confidential communications existing between the parents and the proposed clinical psychologist. Nor, in our opinion, would such an interview to discern the ability of the parents to rear their children be considered a confidential doctor-patient communication or a professional communication. The state has a vital interest in the protection and welfare of all children simply for the reason minors are not able to protect themselves from the best motives but resulting harmful effects of parents. It is not the parents who are seeking the examination to assist them but rather a proper interested party, to wit, the state seeking to determine, on the children's behalf and for their benefit, the ability of the parents to fulfill their obligations in such a way it will not be detrimental to the children. We find no confidential communication in this procedure. It could not be reasonably argued that there would be an invasion of fundamental rights if the parents sought public assistance and were compelled to disclose their assets. We see no real distinction between a professional interviewer asking questions of the parents as to how they would respond to a given situation and the interrogation of their financial assets. In both cases the parents are seeking a privilege and on the one hand the return of their children provided they are fit parents and on the other monetary assistance because of need. In either event the parents are the moving party.

For the foregoing reasons we enter the following

## ORDER

And now, July 11, 1979, the petition for the examination of Melvin Ned Smith and Mary Lou Smith, parents of Melvin Smith, Jr. and Melody

Smith, by Dr. Charles H. Steinmeyer of 304 West Third Avenue, Warren, Pa., is granted. The examination shall be at such time and place convenient to all parties and shall be held confidentially by the examiner and a copy of his report shall be submitted to Attorney David W. Swanson, Attorney Thomas E. Africa and Attorney William R. Mervine.