[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 09-16034
Non-Argument Calendar
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 4, 2010
JOHN LEY
CLERK

D. C. Docket No. 08-00935-CV-T-17-EAJ

ELIZABETH GUANZON RETUYA,
Block 25, Lot 25
Rosario Complex
San Pedro, Laguna 4023
Philippines
0116328080674,
a.k.a. Elizabeth Drummond-Retuya,

Plaintiff-Appellant,

versus

SECRETARY, DEPARTMENT OF HOMELAND SECURITY,
ROBERT MUELLER, III,
Director of the Federal
Bureau of Investigation,
ALEJANDRO MAYORKAS,
Director, United States Citizenship
and Immigration Services,
KATHY A. REDMAN,
District Director, United States
Citizenship and Immigration Services,
Tampa, Florida,
ATTORNEY GENERAL, USA, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(November 4, 2010)

Before HULL, MARTIN and FAY, Circuit Judges.

PER CURIAM:

Elizabeth Guanzon Retuya, proceeding *pro se*, appeals the district court's order dismissing her complaint for failure to state a claim on which relief can be granted. In her complaint, Retuya sought a declaratory judgment under 8 U.S.C. § 1503(a) and 28 U.S.C. § 2201 ordering that she was entitled to derivative United States citizenship. She also requested mandamus relief under 28 U.S.C. § 1361.

Retuya argues on appeal that the district court erred when it dismissed her claim that the defendants unreasonably denied her application for derivative citizenship. She asserts that she satisfied all of the prerequisites for derivative citizenship, including the requirement that she be legitimated by her twenty-first birthday and the requirement that she establish a biological relationship to her United States citizen parent. She also contends that the district court should have granted her request for a writ of mandamus because the appellees had a clear duty

to approve her application for citizenship.[1]  For the reasons set forth below, we affirm the dismissal of Retuya's complaint.

I.

In May 2008, Retuya filed a *pro se* complaint against: Michael Chertoff, Secretary of the Department of Homeland Security; Robert Mueller III, Director of the Federal Bureau of Investigation; Emilio Gonzalez, Director of United States Citizenship and Immigration Services ("USCIS"); Kathy A. Redman, Director of the Tampa District office of USCIS; Attorney General Michael B. Mukasey; Secretary of State Condoleezza Rice; and Kristie Kenney, the United States Ambassador to the Republic of the Philippines.  In her complaint, Retuya argued that the defendants unreasonably denied her application for derivative citizenship. She also asserted that the denial of her application violated her right to equal protection and due process.  Retuya indicated that she wished to proceed under the "old" version of INA § 309(a), 8 U.S.C. § 1409(a).

Retuya's complaint set forth the following facts.  Her father, Charles Drummond, was a United States citizen who served in the Air Force during the

---

[1]In her reply brief, Retuya asserts that the appellees violated her rights to due process and equal protection by denying her citizenship application.  She did not, however, raise that constitutional claim in her initial brief.  Therefore, we conclude that Retuya has abandoned that claim. *See Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008) (noting that issues not raised in a party's initial brief are deemed abandoned, even if the party is proceeding *pro se*).

Vietnam War. While on leave in the Philippines, Drummond began a romantic relationship with Retuya's mother, Herminia Neri Guanzon, who was also known as Erlinda Miranda. Miranda became pregnant, and gave birth to Retuya on February 14, 1969. Drummond and Miranda never married.

In 2006, Retuya filed an application for derivative citizenship with the United States Embassy in the Philippines. The Embassy informed Retuya that she would have to establish that she was legitimated under the law of her residence or the law of Drummond's residence before she reached the age of 21. During the relevant time period, Retuya was a resident of the Philippines, and Drummond was a resident of West Virginia and Florida.

In an attempt to meet the legitimation requirement, Retuya filed a Petition for Determination of Paternity in the Thirteenth Judicial Circuit Court for Hillsborough County, Florida. On January 31, 2007, the state court entered a final judgment of paternity stating that, "for purposes of legitimation and otherwise," Drummond was the father of Retuya. Retuya submitted the order to the Embassy, but the Embassy concluded that she still had not satisfied the legitimation requirement. The state court then amended the judgment of paternity at Retuya's request to reflect that it was retroactive to July 31, 1981. However, the Embassy concluded that the September 2007 order could not be considered for citizenship

4

purposes because it was entered after Retuya reached the age of 21.

In December 2007, the state court entered a third order ratifying a stipulation between Retuya and Drummond. In the stipulation, Retuya and Drummond noted that, according to the State Department's Foreign Affairs Manual, an out-of-wedlock child may be legitimated under Florida law through a signed writing acknowledging paternity. They agreed that Drummond had written at least two letters acknowledging paternity prior to July 31, 1981. Therefore, Retuya and Drummond agreed that Retuya was legitimated on July 31, 1981, when Drummond became a Florida resident. Retuya provided the Embassy with a copy of the December 2007 court order, but the Embassy again concluded that Retuya had failed to satisfy the legitimation requirement.

The defendants moved to dismiss Retuya's complaint pursuant to Fed.R.Civ.P. 12(b)(6). The district court granted the defendants' motion and dismissed Retuya's complaint. First, the district court concluded that Retuya had not shown that she was legitimated before reaching the age of 21. The court observed that Retuya's mother and father never married, an act that would have legitimated her under Florida law. The court also noted that the state court judgment of paternity was not entered until after Retuya's twenty-first birthday. In addition, the district court noted that the State Department had not yet made any

official determination as to whether Retuya and Drummond shared a biological relationship. Accordingly, the district court dismissed the unreasonable-denial claim. Next, the court concluded that the denial of Retuya's application did not violate equal protection or due process. Finally, the district court determined that Retuya was not entitled to mandamus relief because she had not demonstrated a clear right to a United States passport, and because the issuance of a passport is a discretionary function reserved to the Executive Branch.

## II.

We review the district court's grant of a Rule 12(b)(6) motion to dismiss *de novo*, applying the same legal standards as the district court. *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). We accept all of the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. *Id.* Although a complaint need not contain detailed factual allegations, it must include enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. ___, ___, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

Generally, a child born outside the geographic limits of the United States to one parent who is a United States citizen and another who is an alien is considered to be a United States citizen from birth, provided that the parent who is a United

6

States citizen meets certain residency requirements.  8 U.S.C. § 1401(g).  If the child is born out of wedlock, however, he or she is eligible for United States citizenship only if certain additional requirements, set forth in 8 U.S.C. § 1409, are met.  Section 1409 was substantially amended in 1986, but individuals such as Retuya who were at least 15 years old but less than 18 years old at the time of the amendment can elect to proceed under either the "old" or the "new" version of the statute.  *See* note following 8 U.S.C. § 1409 (Effective Date of 1986 Amendment) (quoting § 23(e), as added, Pub.L.No. 100-525, § 8(r), 102 Stat. 2609); *Miller v. Albright*, 523 U.S. 420, 426 n.3, 118 S.Ct. 1428, 1433 n.3, 140 L.Ed.2d 575 (1998).

Here, Retuya has chosen to proceed under the old version of § 1409(a), which provides that a child born out of wedlock is eligible for United States citizenship if the child's paternity is established by legitimation before the child is 21 years old.  8 U.S.C. § 1409(a) (1985) (amended 1986).  The child may be legitimated under the law of his or her own residence or the law of the parent's residence.  *See* 7 Foreign Affairs Manual 1133.4-2c(2)(a), *available at* http://www.state.gov/documents/organization/86757.pdf (explaining that the State Department interprets old § 1409(a) as allowing legitimation under either the law of the child's residence or domicile, or the law of the father's residence or

7

domicile).[2]

In this case, prior to Retuya's twenty-first birthday, Drummond was a legal resident of West Virginia and Florida, and Retuya was a legal resident of the Philippines. Retuya's complaint did not assert that she was legitimated under the law of the Philippines or the law of West Virginia. Therefore, the only question for us to consider is whether the complaint included sufficient factual allegations to show that Retuya was legitimated under Florida law.

The relevant Florida statute provides that an out-of-wedlock child may be legitimated by the subsequent marriage of his or her parents. *See* Fla.Stat. § 742.091. Here, it is undisputed that Retuya's mother and father never married each other. Therefore, Retuya never was legitimated under Florida law. Retuya contends that a child can be legitimated in Florida by means of a written acknowledgment of paternity, but she is incorrect. It is true that one statute, Fla.Stat. § 732.108(2), provides that, "[f]or the purpose of intestate succession," a child born out-of-wedlock is considered to be a descendant of his or her father if the father acknowledges paternity in writing. However, Fla.Stat. § 732.108(2) only applies in the limited context of intestate succession. A written acknowledgment

---

[2]Pursuant to Eleventh Circuit Internal Operating Procedure 10 under Federal Rule of Appellate Procedure 36, copies of all internet materials cited in this opinion are available from the Clerk's Office.

of paternity under that statute does not have any impact on the separate issue of legitimacy.

Admittedly, the State Department's own Foreign Affairs Manual refers to Fla.Stat. § 732.108(2) as a means by which a child may be legitimated. *See* 7 Foreign Affairs Manual Exhibit 1133-4.2A, *available at* http://www.state.gov/documents/organization/86757.pdf. However, the Manual also explains that its summary of state laws is not meant to be definitive. *See id.* The language of Fla.Stat. § 732.108(2) is what controls, and that language limits the applicability of that statute to the issue of intestate succession. Thus, Drummond's written acknowledgment that he is Retuya's father did not legitimate Retuya for purposes of derivative citizenship.

Finally, the state court's adjudication of paternity was not a legitimating act under Florida law. The Florida Supreme Court has explained that legitimacy and paternity are distinct, though related, concepts. *See Daniel v. Daniel*, 695 So.2d 1253, 1254 (Fla. 1997). Thus, an adjudication of paternity does not, in and of itself, make a child legitimate.

Accordingly, Retuya's complaint failed to establish that she was legitimated prior to her twenty-first birthday. Therefore, the district court properly dismissed her claim that the defendants unreasonably denied her application for citizenship.

9

In light of Retuya's failure to meet the legitimation requirement, it is unnecessary for us to consider whether the district court erred when it concluded that the State Department had not yet determined whether Retuya and Drummond shared a biological relationship.

## III.

We review a district court's denial of a petition for a writ of mandamus for an abuse of discretion. *See Schlagenhauf v. Holder*, 379 U.S. 104, 111 n.8, 85 S.Ct. 234, 239 n.8, 13 L.Ed.2d 152 (1964) (noting that the issuance of a writ of mandamus is "generally a matter of discretion"). Under the Mandamus Act, a district court may "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003) (quotation and alteration omitted). "Mandamus relief is only appropriate when: (1) the plaintiff has a clear right to the relief requested; (2) the defendant has a clear duty to act; and (3) no other adequate remedy is available." *Id.* at 1258 (quotation and alteration omitted).

In this case, because Retuya failed to satisfy the requirements for derivative citizenship, she did not have a clear right to a declaration of citizenship or a United

10

States passport, and the defendants did not have a clear duty to approve her application. Therefore, the district court properly denied Retuya's request for mandamus relief. *See Cash*, 327 F.3d at 1258. Accordingly, we affirm the dismissal of Retuya's complaint.

**AFFIRMED**.