In re PROFESSIONAL HOCKEY ANTITRUST LITIGATION.
(D.C. No. M.D.L. 119)

Appeal of METROPOLITAN HOCKEY CLUB, INC. and Golden Blades Hockey, Inc. (six cases).

WORLD HOCKEY ASSOCIATION et al.
(D.C. Civ. No. 72–1995)

v.

NATIONAL HOCKEY LEAGUE et al.

WORLD HOCKEY ASSOCIATION et al.
(D.C. Civ. No. 73–19)

v.

NASSAU SPORTS, etc., et al.
(two cases).

NASSAU SPORTS, a limited partnership,
(D.C. Civ. No. 74–162)

v.

Garry PETERS et al.

and

Golden Blades Hockey, Inc., Intervenor-Defendant (two cases).

Nos. 74–2113–74–2118.

United States Court of Appeals,
Third Circuit.

Argued May 15, 1975.

Decided Feb. 23, 1976.

Leonard W. Wagman, Michael C. Silberberg, Golenbock & Barell, New York City, Perry S. Bechtle, Alan M. Lerner, Cohen, Shapiro, Polisher, Shiekman & Cohen, Philadelphia, Pa., for plaintiffs-appellants Metropolitan Hockey Club, Inc. and Golden Blades Hockey, Inc.

Harry L. Shniderman, Bingham B. Leverich, Covington & Burling, Washington, D. C., for appellee National Hockey League.

Edwin P. Rome, Richard P. McElroy, Blank, Rome, Klaus & Comisky, Philadelphia, Pa., for all appellees except Nassau Sports.

Edward Bennett Williams, Harold Ungar, Richard M. Cooper, Williams, Connolly & Califano, Washington, D. C., for all appellees except National Hockey League, Atlanta Hockey, Inc. and Nassau Sports.

Morris R. Brooke, Drinker, Biddle & Reath, Philadelphia, Pa., for Nassau Sports.

Before STALEY, ROSENN and HUNTER, Circuit Judges.

## OPINION OF THE COURT

STALEY, Circuit Judge.

This is an appeal from an order of the district court granting defendants' motion to dismiss the action with prejudice for failure to comply with the discovery provisions of the Federal Rules of Civil Procedure and with the court's related order. Appellants ask us to determine whether dismissal of their action was an abuse of discretion. Upon a thorough review of the record, we conclude that the district court did abuse its discretion by dismissing the case.

Before examining the facts, we find it essential and appropriate to outline the general background of this case.

In August 1972, the Philadelphia World Hockey Club, Inc. of the World Hockey Association (WHA) filed a broad-based antitrust suit against the Philadelphia Hockey Club, Inc., and other clubs comprising the National Hockey League (NHL). Subsequently, fifteen separate lawsuits were filed against the NHL. One of these actions, *World Hockey Association v. National Hockey League*, E.D.Pa., 351 F.Supp. 462, included the appellant, Metropolitan Hockey Club, Inc. (Metropolitan). All of the cases were consolidated in the Eastern District of Pennsylvania on October 10, 1972 in accordance with 28 U.S.C. §§ 1404(a) and 1407(a). In May 1973, Golden Blades Hockey, Inc. acquired all the assets of Metropolitan and agreed to prosecute and defend the antitrust actions in which Metropolitan was then involved.

In February 1974, the WHA and the NHL and their member teams—except

Metropolitan and Golden Blades—reached a settlement of the antitrust suit. The settlement called for a dismissal of all respective claims against each other and the various individual defendants. However, the five actions to which Metropolitan and Golden Blades (jointly "M-GB") were parties were continued.

Between February and June 1973, both the WHA and the NHL parties served numerous discovery requests upon each other. Apparently, the WHA was delinquent in responding to the NHL interrogatories and NHL complained that some of the responses were inadequate and fell short of any good faith compliance.[1] At a pre-trial conference and hearing on June 7, 1973, the district court directed the parties to negotiate to resolve their discovery disputes and report back to the court by June 25 regarding any discovery disputes that remained. On June 25, counsel for all parties wrote the court requesting additional time to negotiate their discovery problems. These discovery negotiations, as well as the settlement negotiations, continued through summer into the fall. By a series of stipulations, the parties postponed the deadline for completion of discovery to and including November 30, 1973. That fall, the court advised all parties that the case should be set for trial on March 18, 1974.

On February 19, 1974, all the NHL clubs and all the WHA clubs, except M-GB, agreed to settle their respective claims against one another and various individual defendants in each of the fifteen actions. A consent decree was entered by the court at that time terminating the litigation as to all plaintiffs other than M-GB. Until the settlement entered into on February 19, 1974, lead counsel for the plaintiffs was the law firm of Harold Kohn, P.A. Each WHA team had its own general counsel, but responsibility for overall management of plaintiff's litigation was the Kohn firm.

On February 20, 1974, the day after the consent decree, Golenbock & Barell, now in charge of the litigation for M-GB, and counsel for the NHL met with the judge to determine the final pre-trial schedule. At this conference, the court apprised the parties that March 18, 1974 was still the trial date and that all parties should do whatever necessary so that the trial would start on the announced date. Appellant at this time was attempting to gain access to files held by Harold Kohn, counsel for the WHA, in order to proceed with discovery. Kohn claimed a lien on the files for unpaid services and costs of approximately one million dollars and refused to release the files to M-GB until he was paid. At a pre-trial conference on February 26, 1974, the court entered an order recognizing a lien in favor of the Kohn firm on "all papers relating to and arising out of this litigation and now under their control." The order also required M-GB to pay or post sufficient surety to satisfy in excess of $50,000 of the lien, holding that it "could be obligated to pay the total legal fees and related costs expended by WHA . . . [which] could approximate one million dollars." The effect of the order was to leave M-GB without copies of pleadings, orders, and other crucial documents pertaining to discovery.

At the February 26 conference, the court also considered M-GB's motion for a continuance of the March 18 trial date and granted it by extending the trial date to April 1 or April 8. The court then requested the parties to agree on a pre-trial schedule. Counsel for M-GB at this time agreed to answer defendants' interrogatories in two weeks, by March 11, 1974. At the time of this commitment, M-GB asserts that its counsel had not seen a 114-page set of interrogatories with multiple subparts aggregating 1,150 questions and did not realize the inherent difficulty in supplying answers.

The following morning, February 27, defendants began a series of depositions of every officer, director, and major shareholder of M-GB. Counsel for M-GB at con-

---

1. These interrogatories were relative to the financial structure of Metropolitan. The an-

swers, therefore, should have been more specific as required by Fed.R.Civ.P. 33(c).

ference with the court that afternoon strenuously protested defendants' intention to take simultaneous depositions, pleading that "I will never be able to answer [the interrogatories] by March 11th if I have to do that, and it is not fair and it isn't due process." The court rejected M-GB's plea and ordered simultaneous depositions to commence two days later on March 1, 1974.

On March 11, answers to defendants' interrogatories had not been filed. Counsel for M-GB wrote a letter to the court requesting an extension of time until March 18 to answer the interrogatories. On March 13, the NHL moved to dismiss the action for M-GB's failure to answer. A hearing was held the next day, and the court denied defendants' motion to dismiss, giving M-GB until March 18 to supply answers to the interrogatories and extending the trial date to April 15, 1974.

M-GB timely submitted their answers to the interrogatories on March 18. At a pretrial conference on March 19, NHL informed the court that it intended to file a motion to compel supplementary answers. At this same conference, the court advised the parties that the trial date was to be extended from April 15 to September 16, 1974. On March 21, the NHL filed its motion compelling supplementary answers to certain interrogatories because it considered previous responses to be inadequate. This motion sought information regarding M-GB's capital structure. M-GB alleged that answers could not be given because the financial records necessary to provide answers were unavailable because they were in the possession of accountants and lawyers who had invoked liens on them. The motion also sought supplemental answers to fifty-six of the 1,150 interrogatories which involved computation of damages and requested that M-GB attribute specific damages including loss of profits to particular acts of the defendant that were monopolistic. Defendants' motion was argued on March 25, 1974, and on April 12, 1974, the court rendered its decision compelling supplemental answers.

In its order directing supplemental answers, the court also set forth six guidelines and three deadlines for providing these answers. It is this order that appellants contend caused them confusion in "targeting" the wrong date and led to the dismissal of the action. A substantial number of answers were to be filed by April 29, 1974. Another set of interrogatories, which M-GB claimed it could not answer because of inadequate discovery, was to be answered no later than July 25, 1974. A third set of interrogatories, the fifty-six dealing with M-GB's damage claims, was to be supplemented by June 14, 1974.

On April 24, M-GB sought an extension of the April 29 deadline because the district court clerk's office, under the press of other court business, was unable to timely reproduce several hundred documents required in connection with the supplemental answers. The court extended the deadline to May 6. M-GB timely filed these answers on May 6. Included in these answers was some information pertinent to the interrogatories relating to damages which were not due until June 14.

On June 14, M-GB failed to file the supplemental answers. M-GB contends this failure was inadvertent in that the June 14 date had been erroneously omitted from their calendar schedule of dates and deadlines for pending discovery. M-GB argues that they confusingly juxtaposed the June 14 date with the district court's order fixing the July 25 deadline and failed to properly "target" June 14. They also claim that during the period between February 25, 1974 conference and June 14 they were devoting all of their manpower and resources to comply with defendants' "staggering discovery requests" and were unable to commence their own discovery until the second week of April. M-GB asserts that for six weeks prior to June 14, 1974, they pursued a busy deposition schedule in addition to devoting substantial attention to defendants' various motions for protective orders and many other aspects of this litigation.

On June 14, 1974, while attending an argument on cross-motions to compel responses to requests for admission and of defendants' motion for a protective order with respect to a deposition, defendants' counsel announced that they would be filing a motion to dismiss. The next day, Saturday, June 15, M-GB's counsel reviewed its file and the pending motions and discovery proceedings and discovered the omission of the June 14 deadline from their calendar prepared by the firm's managing clerk. On Monday, June 17, the next business day, M-GB's local counsel hand-delivered a letter to defendants' local counsel requesting an extension of the June 14 date citing their reasons therefor and suggesting that the time for the supplemental answers to the damage interrogatories be extended to July 25, 1974, and, if not acceptable, that defendants suggest an alternative date. The following day, defendants' counsel advised that they would not agree to an extension and that the failure to supplement the answers on June 14 was the basis of the motion to dismiss alluded to at the June 14 argument.

On June 19, the NHL filed its motion to dismiss. Also at this time, M-GB filed a motion to extend the June 14 deadline to July 25. These two motions were argued on June 26, 1974, and the court on July 3 entered its order dismissing the actions with prejudice under Rule 37(b)(2)(C) and (d).[2]

■ Control of discovery proceedings is important so a just and speedy determination of the lawsuit can be reached. Rule 37 of the Federal Rules of Civil Procedure provides trial courts with the means and power to enforce compliance with the rules of discovery. The trial court may impose sanctions for failure to comply with an order compelling discovery. This rule gives a court great flexibility and broad discretion regarding what sanctions may be imposed. Rule 37 on its face imposes on a court an obligation to exercise reasoned discretion as

to the alternative sanctions. Implicit in the rule is that the court in exercising its discretion should consider the full record before it. See *Diapulse Corp. of America v. Curtis Publishing Co.*, 374 F.2d 442 (2d Cir. 1967). After reviewing the district court's opinion, we are left with some doubt as to whether other sanctions were considered. The opinion lacks any meaningful discussion regarding this matter. We are aware from our examination of the record that the trial court has been faced with a time-consuming and often frustrating array of events. Even so, it is incumbent on the court in exercising its reasoned discretion to review the possible use of an alternate sanction before it imposes the stringent sanction of dismissal. We find nothing disclosed in the district court's opinion that indicates that it in fact considered an alternative sanction.

■ The imposition of any sanction, although within the trial court's discretion, *DiGregorio v. First Rediscount Corp.*, 506 F.2d 781 (3d Cir. 1974), must be considered in light of the Fifth Amendment's due process clause. *Societe Internationale v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958). The power of a court to compel production of evidence is limited when a party may be denied the opportunity to have the merits of his case adjudicated.

■ Because of this due process limitation, the Supreme Court has held that before the sanction of dismissal can be imposed, presence of such factors as willful disobedience, gross indifference to the right of the adverse party, deliberate callousness, or gross negligence must be found. *Societe Internationale, supra* at 212, 78 S.Ct. 1087.

In 1970, Rule 37 was amended to allow for greater flexibility in imposing sanctions. The term "willfully" which was eliminated from the Rule had operated to characterize the type of conduct for which the sanction of dismissal could be imposed. The elimination of "willfully," however, has not

---

2. Rule 37(b)(2)(C) provides the sanction that: "An order . . . dismissing the action or proceeding or any part thereof . . ." may be entered by a court when a party fails to permit discovery.

changed the requirements set forth in *Societe Internationale*. We believe it is necessary that a trial court apply the guidelines set forth in *Societe Internationale* before imposing the sanction of dismissal. The Advisory Committee Notes pertaining to the change made in Rule 37(b) have made this plain:

> " 'Willfulness' continues to play a role along with various other factors, in the choice of sanctions. Thus, the scheme conforms to Rule 37(b) as construed by the Supreme Court in *Societe Internationale v. Rogers*, 357 U.S. 197, 209, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)."

Notes of Advisory Committee on Rules, 28 U.S.C.A., Rule 37 at 57 (Supp. 1976).[3]

We conclude that before imposing the sanction of dismissal, the trial court must find some willfulness, bad faith or fault when a party fails to comply with an order compelling discovery. *Societe* at 212, 78 S.Ct. 1087. Simultaneously, the court must be convinced that the failure to comply was not due to any inability or accident. Therefore, the order of dismissal can stand only if the trial court found that M-GB's failure to comply with the order was willful, conscious and intentional. *Societe* at 212, 78 S.Ct. 1087.

The district court found that M-GB had acted willfully and in bad faith by disregarding the court's order, by failing to meet other deadlines over a seventeen-month period and by not filing adequate answers. The court further found that M-GB exercised "flagrant bad faith" by the same conduct and also by not filing any motions until five days after the June 14 deadline.

First, we believe the court erroneously considered the circumstances that occurred over the seventeen months. We are mindful that the full record should be considered. *Diapulse Corp. v. Curtis Publishing*, 374 F.2d 442 (2d Cir. 1967). However, there are several important considerations which mitigate M-GB's actions.

The record plainly shows that no one was overly concerned with an expeditious hearing of the case prior to February 19, 1974. We do not criticize this since it is obvious that a settlement was possible and all parties were working toward this end. Although the district court found that the answers of the original plaintiffs filed to defendants' May 25, 1973 interrogatories were less than adequate and fell short of "minimal good faith compliance," it took no action on defendants' motion to compel supplementary answers because the parties were moving toward a possible settlement and hoped that any discovery matters could be solved mutually between the parties without further court intervention.

The parties worked on a settlement through the summer and fall of 1973 and also continued in their attempts to resolve the disputes as to discovery matters. During this time, the NHL made no Rule 37 motions seeking dismissal of the case, although many answers were not supplied while others remained inadequate. We are aware that the district court had urged the parties to solve their discovery problems without his help, and we make no attempt to minimize or question the efforts of those involved in completing the discovery. We simply point out that the period from February 2, 1973 to January 31, 1974 was spent primarily in negotiating discovery matters and attempting to settle the suit. Since no further demands for answers were made by the NHL during this period, we must assume that their concern with discovery prior to February 19, 1974 was subordinated to their primary interest in settling the litigation. We believe that the critical concerns with discovery developed only after M-GB's pronouncement that it was not going to be a party to any settlement.

Moreover, during the phase of the case prior to February 20, 1974, the WHA was represented by the law firm of Harold P. Kohn, P.A. Each WHA member team had its separate general counsel, but the responsibility for managing and litigation of the antitrust action in behalf of all the plaintiffs was with the Kohn firm as lead coun-

---

**3.** See also 8 Wright & Miller, Federal Practice & Procedure § 2291 at 811–13 (1970).

sel. Each of the teams' general counsel was to provide assistance to the Kohn firm in completing all discovery matters. The final responsibility for answering interrogatories was with lead counsel and in fact the Kohn firm did prepare many answers itself. Any delays or deficiencies in the answers caused by Kohn should not be attributed to M-GB's present counsel.

Appellant's attorneys, Golenbock & Barell, had been serving as its general counsel during this time. When they advised Kohn on or about January 15, 1974 that they would not agree to the settlement that was being worked out between the WHA and the NHL and on January 31 requested that Kohn make available all of his files pertinent to the pre-trial discovery, they met with a flat rebuff. When the district court upheld this refusal and M-GB was effectively denied access to Kohn's files, it was suddenly subjected to a heavy burden. It became necessary for M-GB to complete its discovery files laboriously copying the voluminous court records. The question of whether Kohn's files should have been made available to Golenbock & Barell is not an issue of this appeal, and we make no attempt to question the district court's judgment. However, M-GB was left with almost no discovery materials and it faced a complex antitrust case scheduled for trial in five weeks. We perceive this to be an onerous burden and another mitigating factor which the district court failed to consider.

It is plain that counsel for M-GB worked frantically to complete discovery within the deadlines set by the court. They were involved in taking simultaneous depositions and attempting to provide answers to innumerable interrogatories.[4] We question the judgment of M-GB's counsel in committing himself to answer an enormous quantity of interrogatories by the March 11 date, especially when he had not yet seen them. The failure to submit timely answers led to de-

fendants' first Rule 37 motion for dismissal. This record, however, does not disclose that the failure was intentional or willful. The district court apparently felt likewise for it denied defendants' motion for dismissal and extended M-GB's time to answer the interrogatories to March 18. These answers were timely submitted, but NHL claimed they were inadequate. Subsequently, on March 21, the defendants filed a motion to compel supplementary answers as to certain interrogatories concerning M-GB's capital structure and also answers involving the specific monopolistic acts.

We now come to the most crucial facts. Regarding the interrogatories that M-GB could not answer because of inadequate discovery, the district court ordered supplemental answers to be filed "when the necessary discovery has been completed and in any event not later than July 25, 1974." The answers dealing with damages were to be filed "whenever the data became available" and "in no event later than June 14, 1974."

M-GB missed the June 14 deadline. Defendants contend that this was a willful failure to file. To support this view, defendants suggest that appellants cannot rely on a "clerical error" as the reason for missing the date because M-GB never mentioned this fact in their brief in opposition to the dismissal motion, nor in oral argument on the motion. Defendants also allege that when appellants found out that they missed the deadline, they continued taking depositions and made no attempt to come forward with the answers. The transcript of oral argument, however, contains this response by M-GB's counsel to the court as to why they did not file a request for an extension of time before June 14:

> Mr. Wagman [M-GB counsel]: "Because we felt that we had to the extent that we had information available to use, we had supplemented those answers in May, and that by July 25th we were going to an-

---

4. Leonard Wagman, a member of the law firm of Golenbock & Barell, filed a 144 paragraph motion for reargument and affidavit in which he averred that M-GB counsel was required to prepare for, attend, and defend simultaneous depositions on every business day between the February 27 conference and the March 11 deadline. They claim that some of these simultaneous depositions took place in separate cities.

swer all the remaining supplemental—give the Court and our adversaries all the remaining supplemental answers. That was the deadline we had targeted, July 25th to supplement any answers we hadn't supplemented in May."

Moreover, when M-GB's counsel discovered the oversight on June 15, they made a request of defendants' counsel for an extension on the next business day, June 17.

Mr. Wagman pointed out to the district court that having devoted substantial time and energy on this case, he would not have knowingly or willfully disregarded the deadline. His assertion finds support in the fact that there were only fifty-six out of 1,150 interrogatories to be answered. Furthermore, M-GB was in the process of taking depositions that would provide the necessary information to answer the fifty-six interrogatories. They claim that without these depositions many of the supplementary answers could not be made.

■ After carefully reviewing the record, we conclude that there is insufficient evidence to support a finding that M-GB's failure to file supplemental answers by June 14, 1974 was in flagrant bad faith, willful or intentional. We believe that under all of the circumstances the extreme sanction of dismissal was unwarranted. Extenuating factors were present. M-GB's counsel exercised an enormous effort after they took control of the case in attempting to complete the discovery matters within a brief period. On the other hand, we must caution M-GB and their counsel that upon remand of this case they must be extremely diligent in completing discovery and in not breaching reasonable deadlines. We do not imply that upon remand, should M-GB fail to promptly proceed with discovery and timely file adequate responses to the interrogatories, dismissal under Rule 37 or other alternative sanctions might not be appropriate. We hold that the sanction of dismissal was improper under the circumstances of this case.

We have considered appellant's other arguments and find no merit in discussing them at this time.

The judgment of the district court dismissing the complaint will be reversed and the case remanded for further proceedings.

JAMES HUNTER, III, Circuit Judge (dissenting).

I respectfully dissent.

Judge Staley has, in his majority opinion, fully set forth the sequence of events including the various discovery deadlines that were established—deadlines that were not met by the appellant.

Various sanctions were available to the district court. At the end, that court drew the line and dismissal was chosen.

Admittedly, this is the most severe sanction but, in my view, its use, under the circumstances here, did not constitute an abuse of discretion.

I would affirm.