### FORD MOTOR COMPANY

#### v.

### NU–CAR CARRIERS.

#### Civ. A. No. 79–1692.

United States District Court,
E. D. Pennsylvania.

March 7, 1980.

---

Robert L. Archie, Jr., Dennis G. Fenerty, Philadelphia, Pa., for plaintiff.

Robert M. Gault, Boston, Mass., Barbara E. Etkind, Philadelphia, Pa., for defendant.

## MEMORANDUM

NEWCOMER, District Judge.

Defendant has filed a motion for an order dismissing the complaint with prejudice, pursuant to Rule 37 of the Federal Rules of Civil Procedure. Rule 37 provides in pertinent part:

### FAILURE TO MAKE DISCOVERY: SANCTIONS

(b) *Failure to Comply with Order.*

. . . . .

·(2) *Sanctions by Court in Which Action is Pending.* If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

. . . . .

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

. . . . .

For reasons discussed below, the Court will grant defendant's motion.

In *Societe International v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 1096, 2 L.Ed.2d 1255 (1958) the Supreme Court stated that Rule 37

". . . should not be construed to authorize dismissal of [a] complaint because of petitioner's noncompliance with a pretrial production order when it has been established that failure to comply has been due to inability, and not to willfulness, bad faith, or any fault of petitioner."

Although Rule 37 was amended in 1970 eliminating the word "willfully", it appears that the change in the wording of the rule has not changed the requirements of *Societe International* 8C. Wright and Miller, Federal Practice and Procedure, § 2291 at 811 ·13 (1980). The Third Circuit in *In Re Professional Hockey Antitrust Litigation,* 531 F.2d 1188, 1193, rev'd. on other grounds, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), concluded "that before imposing the sanction of dismissal, the trial court must find some willfulness, bad faith or fault when a party fails to comply with an order compelling discovery [citing *Societe International,* 357 U.S. at 212, 78 S.Ct. at 1095]. Simultaneously, the Court must be convinced that the failure to comply was not due to any inability or accident. Therefore, the order of dismissal can stand only if the trial court found that [the] failure to comply with the order was willful, conscious and intentional," citing *Societe International* at 212, 78 S.Ct. at 1095.

Plaintiff's complaint, filed May 10, 1979, claims that defendant was under a contractual duty to collect certified checks from a

car dealer to whom defendant delivered four vehicles. Plaintiff alleges that defendant Nu-Car Carriers owes $20,710.89 for its breach of the contractual obligation.

In a pretrial conference held on July 26, 1979, the Court Ordered that all discovery was to be completed by September 26, 1979. In a letter dated September 20, 1979, plaintiff requested an extension of time in which to complete discovery. Plaintiff proposed a November 30, 1979 cut-off date; the Court, however, granted an extension only until October 30, 1979. Notwithstanding the extension, plaintiff failed to comply with the Court's Order. On November 16, 1979, defendant filed a motion to compel discovery.

In an Order dated November 23, 1979 the Court granted defendant's motion to compel. The Order provided in pertinent part:

1. Plaintiff shall supply the material requested pursuant to Interrogatory No. 7 and Document Request No. 9. The Court rejects plaintiff's general claim of attorney-client privilege. If however, plaintiff has specific objections to particular material, it should submit such objections to the Court with appropriate affidavits. *North American Mortgage Investors v. First Wisconsin National Bank of Milwaukee,* 69 F.R.D. 9, 12 (E.D.Wis.1975).

2. Plaintiff shall supply the material requested in Interrogatories No. 8, 14 and 15, and Document Request No. 8.

3. The Court believes that the material sought in Interrogatories 16–24 and Document Requests No. 12–21 is relevant and necessary for defendant's pattern and practice defense. The material sought, however, is overly broad and excessive. The Court directs the parties to meet and attempt to devise an acceptable compromise solution. Any remaining disputes shall be submitted to this Court within ten (10) days of this Order.

Upon entering the Order, the Court notified both counsel by telephone. Defendant's counsel indicated to the Court that on December 3, 1979 he contacted plaintiff's counsel and proposed a four year limitation on the requested discovery. Notwithstanding the Court's Order of November 23, an Order directed primarily at plaintiff, plaintiff's counsel failed to respond to defendant's offer of compromise. It should be noted that at this time a Board of Arbitration was scheduled to hear the case on December 20, 1979.

Because of plaintiff's flagrant disregard of this Court's Order of November 23, 1979, a subsequent Order was entered on December 10, 1979. The Order provided in pertinent part:

The Court hereby Orders plaintiff to answer all outstanding interrogatories and supply all requested documents by Friday, December 14, 1979. Failure to supply such material will result in dismissal of this action with prejudice. It appears to the Court that plaintiff has been dilatory in producing the outstanding discovery material and has failed to exhibit good faith in negotiations with defendant to limit the scope of certain interrogatories and requests. The Court is aware of the large volume of the material requested; the scope of the request, however, does not excuse plaintiff's disregard for the ten (10) day deadline imposed by this Court's Order of November 23, 1979. The parties were directed to confer and attempt to reach a compromise as to interrogatories 16–24, and document requests 16–21, and to submit any remaining disputes to the Court within the ten (10) day period. Defendant's counsel expeditiously complied with the Order and proposed a time limitation of four years. Plaintiff failed to respond to defendant's offer, thereby preventing the parties from submitting any remaining disputes to the Court within the ten (10) day period. All discovery was to have been completed by December 10, 1979.

The Court will not tolerate any additional delay. Plaintiff brought this action, and the Court believes that it has a responsibility to supply defendant with relevant discovery materials as expeditiously as possible. As previously indicated, failure to supply all materials by December 14, 1979 will result in dismissal of this action with prejudice.

Defendant's central concern, at this point, focused on interrogatories No. 16–24 and Requests No. 12–21 in which it requested any and all information concerning any and all instances where plaintiff received an uncertified check from a carrier such as defendant. Defendant was seeking information regarding instances in which the collection instructions stated "C.O.D. Cert.", or a general notice had been circulated which put the dealership on C.O.D. certified status, or the carrier's tariff stated that cash or certified check would be collected on C.O.D. or C.O.D. certified deliveries.

During the week of December 17, 1979 plaintiff supplied defendant with supplemental answers to defendant's interrogatories. The answers indicated that uncertified checks which were not returned by the bank were unavailable. The answers further indicated, however, that uncertified checks which were returned by the bank to Ford were available for inspection. Plaintiff did not, however, produce copies of these checks. Plaintiff indicated that

"[t]he checks in each of these transactions are available. The information which will be supplied by these checks is, however, limited. The checks do not real (sic) the unit involved, the carrier involved or the collection status of the dealer and consequently do not supply the crucial information sought by defendant." Plaintiff's Supplemental Answer to Defendant's Interrogatories, p. 10.

Ten days before the Arbitration hearing, which had been rescheduled from December 20, 1979 to January 21, 1980, defendant's counsel called plaintiff's counsel and requested to see the checks. Counsel was informed that the checks were not available for inspection in Philadelphia but were still at a Ford facility in Dearborn, Michigan. In addition, plaintiff's counsel admitted that the answers provided in the second supplemental responses were partially inaccurate insofar as they indicated that the returned checks (which were allegedly

available) did not contain the unit number of the vehicles involved.[1]

On January 16, 1980, defendant's counsel was in Philadelphia and contacted plaintiff's counsel. Defendant's counsel remembers that plaintiff's counsel told him that he had no additional documents beyond those which had been sent on previous occasions. Plaintiff's counsel has a different recollection of the conversation, as he alleges that defendant's counsel declined to come to its office and examine the checks. Plaintiff's counsel contends that he told defendant's counsel that the checks were available and that defendant's counsel could look at the checks to see if they suggested other discovery materials. Defendant filed a Motion for Entry of Judgment, pursuant to this Court's Order of December 10, 1979, on January 21, 1980. The Court had, however, been supplied with a copy of the motion prior to that date. The Court determined that a hearing would be advisable, but did not wish to postpone the arbitration hearing a second time. The Court, in an order dated January 18, 1980, stated that:

"[U]pon consideration of the defendant's Motion for Entry of Judgment, it is hereby Ordered that decision on the motion is DEFERRED. The arbitration hearing shall proceed as scheduled, without prejudice to the granting of the defendant's motion at a later date, if the facts and circumstances existing as of this date so warrant."

In a hearing held on February 9, 1980, the Court heard argument on defendant's Motion for Dismissal. The Court is guided by *In Re Professional Hockey Antitrust Litigation*, 3 Cir., 531 F.2d 1193, rev'd. on other grounds, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), and *Barnett v. Outboard Marine*, 611 F.2d 32 (3d Cir., 1979). The Court finds that Ford's failure to comply with this Court's Orders of November 23, 1979 and December 10, 1979 was a flagrant exhibition of bad faith. It is clear to the Court that if Ford had made the most ele-

1. Plaintiff's counsel has expressly indicated in its Memorandum In Opposition to Defendant's Motion to Entry of Judgment filed on January

21, 1980 that "[t]he maker of the checks on occasion has included the serial number of the unit."

mentary examination of the "bounced checks", it would have discovered the unit numbers on the checks and their obvious importance in locating invoices. Instead, as late as December 17, 1979, plaintiff was still representing to defendant's counsel that no such numbers existed. The Court had previously determined that the checks in combination with the invoices, were clearly relevant to defendant's estoppel and waiver defense. The checks themselves, however, were meaningless without the corresponding invoices. Ford's eleventh-hour production of the checks did not, in any way, assist defendant in preparation of its defense. The Court need not determine whose recollection of the January 16 conversation between counsel is accurate. Assuming, without deciding, that the checks were in Philadelphia, it is clear that the checks alone did not provide the requested information. The unit numbers on the checks were only a first step in locating the corresponding invoices.

In its Memorandum In Opposition to Defendant's Motion for Entry of Judgment, Ford seem finally to acknowledge the process locating invoices:

The serial number [on the check] identifies the relevant assembly plant. To recapture the invoices in these instances, Ford would have to have contacted each assembly plant and asked it to identify the historical file annotation for the relevant invoice. The assembly plants would then have had to request a search of the historical files for the appropriate invoice. Assuming the invoice was retrieved by this effort, Ford would have been able to answer Nu-Car.

Plaintiff's Memorandum In Opposition to Defendant's Motion for Entry of Judgment, p. 5.

Plaintiff's counsel indicates that before mid-January Ford did not know that this information existed. Plaintiff argues that because Ford did not have the information readily available, it should be excused for its inaccurate and incomplete replies to defendant's interrogatories. Plaintiff's failure to correct its misinformation about the checks, and provide information regarding the existence of the unit numbers on the checks prior to January 11, 1980, makes Ford's explanation of its difficulty in complying with the Court's Orders of November 23, and December 10, 1979 difficult to accept. It is obvious to the Court that plaintiff's counsel never inspected the "returned checks" prior to mid-January since counsel indicated in plaintiff's supplemental answers that such checks did not confirm unit numbers. Similarly, plaintiff's counsel did not attempt to work out a method of locating the invoices until pressured to do so by defendant's counsel, only days before the trial.

In summary, plaintiff's response to the discovery orders of November 23, and December 10, 1979 caused defendant severe prejudice in preparation of its estoppel and waiver defense. Plaintiff was obviously more familiar with its own system of record keeping than was defendant; yet without defendant's prompting, plaintiff would likely still contend that none of the returned checks contained unit numbers. Once deemed relevant by the Court, good faith compliance with the Court's Order of November 23, 1979 was plaintiff's responsibility; and compliance, in the Court's view, required plaintiff to produce returned checks and the corresponding invoices to defendant. Defendant still does not have the checks and invoices it requested.

Plaintiff's failure to respond to defendant's offer to narrow the scope of discovery, plaintiff's inaccurate responses in its Second Set of Supplemental Answers, and plaintiff's failure to utilize readily available methods to trace shipping invoices to determine whether the type of check collected conformed with collection instructions, all confirm this Court's conclusion that plaintiff failed to exhibit good faith in responding to direct orders of this Court. The entire record "reveals a course of conduct that frustrates the fundamental purpose underlying the discovery rules to provide adequate information to litigants in civil trials." *Barnett, supra*, 611 F.2d at 36. See *Schlagenhauf v. Holder*, 379 U.S. 104, 114–

26

15, 85 S.Ct. 234, 240–241, 13 L.Ed.2d 152 (1964). The Court simply cannot allow a plaintiff to bring a lawsuit and then to fail to make any reasonable efforts to comply with Court-ordered discovery requests. The action must therefore be dismissed.