AINA SAOLUAGA NUA, in his capacity as a member of and
Speaker of the House of Representatives and individually,
TUILEFANO M. VAELA`A, in his capacity as a member of the
Senate and individually, and OTOMALESAU JOHN AR SUE,
in his capacity as a member of the House of Representatives
and individually, Plaintiffs,

v.

TAUESE P.F. SUNIA, as Governor of American Samoa and
individually, SPECIAL SERVICES CORPORATION,
TOGIOLA T.A. TULAFONO, as Lieutenant Governor of
American Samoa and individually, DOUGLAS J. JUERGENS,
officially and individually, PATI FAIAI, officially and individually,
AMERICAN SAMOA GOVERNMENT, and JANE DOES 1-10,
jointly and severally, Defendants.

High Court of American Samoa
Trial Division

CA No. 128-99

September 28, 2000

Before RICHMOND, Associate Justice, ATIULAGI, Associate Judge, and TAUANU`U, Temporary Associate Judge.

Counsel: For Plaintiff, Afoa L.S. Lutu, Legislative Counsel, Arthur Ripley, Jr., Counsel for the Senate, and Christa Tsu-Hsiu Lin, Assistant Legislative Counsel
For Defendants, Fiti A. Sunia, Assistant Attorney General

ORDER ON MOTIONS TO AMEND COMPLAINT, TO COMPEL DISCOVERY, FOR CONTEMPT, AND FOR RECONSIDERATION

### Procedural History

The present dispute arises out of the purchase of property in Ili`ili known as the Country Club ("CC"), comprising a restaurant and nightclub. The defendants (collectively "the Executives") arranged the contract for this purchase with prior owner Bill Tedreck ("Tedreck") without the benefit of approval or an appropriation from the Legislature of American Samoa ("the Legislature"). The plaintiffs (collectively "the Legislators") took issue with the purchase and filed a complaint on December 7, 1999, alleging that it violated constitutional, statutory, and common law.

We granted the Legislators summary judgment in our order on cross motions for the same, holding that the Executives overstepped their constitutional authority in acquiring the CC, and that the purchase agreement was therefore illegal. *Nua v. Sunia*, 4 A.S.R.3d 211 (Trial Div. 2000). The purchase being illegal, we declared it to be null and void, and granted the Legislators' request for injunctive relief. Our order was crafted to return the CC to its former owner and, as near as possible, return the parties to the positions they occupied before the purchase.

The Executives filed a motion for reconsideration on August 14, 2000, to which the Legislators responded on September 6, 2000 with an

opposition brief. The Legislators filed four other motions on August 30, 2000, including: (1) a motion for expedited hearing, (2) an application for order to show cause re contempt, (3) a motion to compel discovery, and (4) a motion for leave to amend complaint.

We declined to grant the motion for expedited hearing. The other three motions were set for hearing on the same day as the motion for reconsideration. The hearing was duly held on September 18, 2000, with counsel present.

## Discussion

### A. Motion to Amend Complaint

■ The Legislators move to amend their complaint under T.C.R.C.P. 15(a). The Rule 15 standard is lenient, providing that the court shall give leave to amend "freely when justice so requires." *Id.* The Legislators have proposed most of the amendments for the purposes of establishing and clarifying taxpayer and legislator standing. We will permit these amendments on the basis that to deny an opportunity to amend a complaint to cure standing deficiencies would put too high a premium on artful pleading and would be contrary to the purpose of Rule 15. *United States v. Sullivan*, 919 F.2d 1398, 1402 (9th Cir. 1990). The Legislators' other amendments, which seek to clarify the status of funds involved in the CC transaction, will also be permitted. "Denial is proper only when amendment would be clearly frivolous, unduly prejudicial, cause undue delay or a finding of bad faith is made." *Id.* at 1402 (citing *Moore v. Kayport Packaging Exp. Inc.*, 885 F.2d 531, 519 (9th Cir. 1989)). The Executives have failed to establish the presence of any of these factors; the motion to amend will therefore be granted.

### B. Motion to Compel Discovery

The Legislators served a discovery request entitled "Request for Production of Documents and Things" on the Executives, pursuant to T.C.R.C.P. 34, on June 21, 2000. The Executives failed to respond to this request within the 30-day period mandated by Rule 34. Under Rule 34(b), this failure to respond entitled the Legislators to move for an order compelling the Executives to answer the request pursuant to T.C.R.C.P. 37.

On September 15, 2000, the Executives filed a last-minute response to the Legislators' discovery motion, in which the Executives requested a stay of discovery under T.C.R.C.P. 26(c). The rule provides that the court may stay discovery upon a showing of good cause. The Executives asserted that the issue of the Legislators' standing should be resolved before permitting discovery, for the purpose of conserving the parties'

resources.

■ Trial Court Rules governing discovery are liberally construed in favor of discovery. *Sclagenhauf v. Holder*, 379 U.S. 104, 114 (1964).

Given this liberal construction, parties opposing discovery must shoulder a heavy burden when arguing why discovery should be denied. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975). Rule 26 does not provide the court with authority to prohibit disclosure whenever it seems advisable or expedient. Rather, good cause requires a showing that the order is required to prevent clearly defined and serious injury, harassment, or the abuse of court processes. *Bridge C.A.T. Scan Assoc. v. Technicare Corp.*, 710 F.2d 940, 944-45 (2d Cir. 1983). Good cause is not established by showing that discovery may involve inconvenience and expense. The Executives must demonstrate some extraordinary justification to satisfy the good cause requirement of Rule 26. *Twin City Fire Ins. Co. v. Employers Ins. of Wausau*, 124 F.R.D. 652, 653 (D. Nev. 1989) (citing *Lehnert v. Ferris Faculty Ass'n-MEA-NEA*, 556 F. Supp. 316, 318 (W.D. Mich. 1983)). The Executives failed to meet this burden at the hearing, and we will accordingly deny their motion for a protective order.

The Executives have offered no substantial objections to the discovery request and no substantial justification for failing to comply within the 30-day time period prescribed by T.C.R.C.P. 34. Despite this recalcitrance, for which the Executives' counsel appears to be principally responsible, on our own motion we will exercise our discretion under Rule 34 to allow the Executives approximately 60 additional days to comply with the Legislators' discovery request. We will grant the Executives one last chance.

■ In this respect, we pointedly emphasize T.C.R.C.P. 37(a)(4), under which we may find it necessary to award reasonable expenses, including attorney's fees, to a party that successfully obtains a court order to compel discovery. Rule 37(a)(4) sanctions may be imposed on the party failing to comply with discovery, or the party's attorney advising non-compliance, or both. *See Pago Petroleum Prod. v. Kim*, 29 A.S.R.2d 218, 222 (Trial Div. 1996). The Executives are forewarned that we will not look kindly on this issue if we must confront it again.

C. Contempt

This Court possesses the power to punish by fine or imprisonment, at its discretion, contempt of its authority consisting of, *inter alia,* "disobedience or resistance to its lawful writ, process, order, rule, decree, or command." A.S.C.A. § 3.0203(3). The August 3, 2000 order enjoined the Executives from "disbursing, expending, or obligating ASG funds for

the purchase and operation of the CC." *Nua*, 4 A.S.R.3d at 221. It also enjoined them from "transferring, selling, depleting, or otherwise disposing of CC and SSC assets." *Id.* We realize that the two injunctions could be construed as contradictory. Accordingly, the Executives have shown sufficient cause why they did not comply with the August 3, 2000 order.

Having recognized the possible contradiction contained in our prior order, we take this opportunity to clarify the order by amending paragraph 3.b to read "transferring, selling, depleting, or otherwise disposing of CC and SSC assets, except as necessary to return the CC to Tedreck." We intend by this revision to instruct the Executives to thoroughly account to Tedreck for the CC assets and operations by the SSC, and to return the CC to him, and Apoua Tedrick if appropriate, within a reasonable time frame. Failure to do so in a good faith manner may result in contempt sanctions.

## D. Motion for Reconsideration

■ Reconsideration is appropriate if the trial court "(1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Sch. Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993). The Executives ground their motion for reconsideration on the second of these bases, asserting that our prior order erred in three ways.

First, the Executives assert that our order "erroneously stripped [them] of statutory authority," allegedly conferred upon them by A.S.C.A. § 37.0210, to acquire property absent an appropriation. The Executives argue that "[t]here can be no other logical meaning of [§ 37.0210] but that the Fono envisioned the Executive branch committing ASG funds to compensate" a property owner from whom it had purchased property without an appropriation. We thoroughly considered this argument in our August 3, 2000 order and found it groundless. The Executives' restatement of the argument is redundant, without factual or legal justification, and therefore somewhat frivolous. Again we have not been presented with a legal argument, in the form of statutory construction or otherwise, to contest our interpretation of the statute. Nor have we seen any factual basis, in the form of legislative history or otherwise, to support an alternative interpretation. Most importantly, the Executives have failed to address the vexing issue of constitutionality. That is, if the statute conferred those powers described by the Executives, it would violate the territory's constitution. Our duty would be to strike such a statute down. Thus, the Executives offered no new grounds to support their assertion of clear error regarding the effect of A.S.C.A. § 37.0210 so as to require reconsideration.

238

Second, the Executives contend that the holding that the CC purchase was illegal, and thus null and void, was in error. They contend that the sales agreement should be allowed to stand in order for the Executives to seek approval from the Legislature permitting the agreement. We cannot countenance such faulty logic. "It is basic contract law that a promise to perform an illegal act is unenforceable. Furthermore, it is well established that a contract entered into by a government official lacking authority, or failing to follow proper procedures, is void." *Rakshan v. Am. Samoa Gov't*, 28 A.S.R.2d 151, 155 (Trial Div. 1995) (citing *Whiteside v. United States*, 93 U.S. 882, 884 (1876)). The Legislature's approval of the present contract for the CC purchase would be unavailing, because the contract has never had any legal effect. If the Executives wish to purchase and operate the CC, they may draft a new agreement to accomplish this objective. And as a prerequisite to implementation of any new agreement, they must first obtain an appropriation from the Legislature for the purchase. Such process preserves the Legislature's constitutional prerogative to control the territory's purse strings while effectuating the Executive's powers to acquire property, renegotiate leases, and otherwise "act as a landlord of ASG's property."

Third, the Executives assert that the order constituted "judicial legislation" in that it placed unwarranted restrictions on their management of ASG leases "under the guise of the constitution." Again, the Executives are merely rehashing arguments used when they opposed summary judgment, in this instance with respect to the effect of A.S.C.A. §§ 37.2020 through 37.2030. We have already considered these arguments. The Executives introduce nothing new regarding this issue, and again fail to address constitutional issues. We advise counsel to examine our territory's constitution before accusing the Court of undermining that which we have foresworn to protect.

In closing, we remind counsel for the Executives that parties moving for reconsideration or new trial must do more than call incorrect a court's reasons for a decision. The Executives' motion is devoid of case law, analysis or explanation. Their contentions are without support, leaving conclusions without merit. As such, we will deny the Executives' motion for reconsideration.

### Order

1. The Legislators' motion to amend the complaint is granted.

2. We direct the Executives to comply with the Legislators' request of June 21, 2000, for production of documents no later than November 30, 2000. For that reason, the Legislators' present motion to compel discovery is denied.

3. Paragraph 3.b of the order entered on August 3, 2000, is amended to read "transferring, selling, depleting, or otherwise disposing of CC and SSC assets, except as necessary to return the CC to Tedreck." By December 31, 2000, the Executives shall thoroughly account to Tedreck for the CC assets and operations by the SSC and return the CC to him, and Apoua Tedreck if appropriate. Because we deem it necessary to clarify the order by this amendment, the Legislators' present application to hold the Executives in contempt is denied.

4. The Executives' motion for reconsideration is denied.

It is so ordered.