OPINION
{¶ 1} Ermal Florence, Harold Florence, and Janet Smelser appeal the June 7, 2004 decision of the Common Pleas Court of Mercer County, civil division, ordering Ermal Florence to undergo an independent medical examination pursuant to Civil Rule 35.
 {¶ 2} Ermal Florence is a 92 year old widow currently residing at an assisted-living center in Clark County, Ohio. Ermal has four children — Harold Florence, Janet Smelser (f.k.a Janet Florence), Glen Florence, Jr., and Larry Florence. Ermal granted Glen, Jr. power of attorney in 1985, and he served in that capacity until Ermal revoked that authority on January 10, 2002. On that date, Ermal assigned power of attorney to her other son, Harold.
 {¶ 3} On April 2, 2002, Harold and Ermal initiated a civil action against Glen, Jr. and Larry alleging, inter alia, that Glen breached his fiduciary duties by failing to properly account for Ermal's assets and was involved in self-dealing; declaratory relief validating certain transactions that took place between Ermal, Harold, and Janet while Harold was Ermal's power of attorney, which involved $100,000 in certificate of deposits and certain real estate parcels located in Ohio and South Carolina; and damages against Glen, Jr. and Larry for wrongfully utilizing or converting Ermal's assets.
 {¶ 4} In their answer, the defendants asserted, inter alia, that Janet Smelser should be joined to these proceedings,[1] plaintiffs' claims are barred by Harold and Janet's undue influence on Ermal, and that Ermal lacked the necessary mental capacity to execute the power of attorney to Harold. Moreover, on August 1, 2003, the defendants Glen, Jr. and Larry filed a counterclaim naming Harold and Janet (not Ermal) as the defendants.
 {¶ 5} In their counterclaim, Glen, Jr. and Larry asserted that they have taken care of their mother, Ermal, for several years and prior to Harold being granted the new power of attorney, they had an expected inheritance under Ermal's will. Furthermore, Glen, Jr. and Larry (hereinafter "defendant-appellees) contend that as a result of Harold and Janet's (hereinafter "plaintiff-appellants") undue influence over Ermal, Harold and Janet improperly depleted Ermal's estate (and their possible inheritance) by transferring two real estate parcels as well as miscellaneous funds and property to themselves (i.e. Harold and Janet), which constituted a tortuous interference with a prospective inheritance.
 {¶ 6} On March 5, 2004, the defendant-appellees moved to appoint a guardian ad litem for Ermal alleging "that the obvious conflicts between the individual interests of Harold . . . compared to those of Harold . . . in his capacity as the `attorney in fact' of Ermal . . ., as well as Ermal[`s] . . . personal circumstances, arise to a level where Ermal . . . falls short of the competency necessary to make independent decisions in this litigation." Defendant's Motion to Appoint Guardian Ad Litem for Ermal Florence at p. 4. In response, the plaintiff-appellants stated that there was no evidence that Ermal was incompetent and that no conflict existed in the case. For support, the plaintiff-appellants offered an affidavit by Dr. Carla Myers, Ermal's treating physician for the previous two years, which stated, inter alia, that Ermal was "alert and responsive to questions, . . . able to engage in meaningful dialogue about her medical history and family affairs, . . . not suffering from Alzheimer's disease, . . . [and] not incompetent." Fist Affidavit of Dr. Carla Myers, March 30, 2004.
 {¶ 7} On April 7, 2004, the defendant-appellees withdrew their motion for guardian ad litem; however, on April 16, 2004, the defendant-appellees filed a notice pursuant to Civ.R. 35 for a psychiatric examination of Ermal in order to determine whether "she has the capacity and/or competence . . . for the appointment of a guardian ad litem . . . and her susceptibility to undue influence with reference to the execution of documents, transfer of assets and other transactions at issue in this litigation." Amended Notice Pursuant to Civil Rule 35 and Request for Document Production. For support, the defendant-appellees offered an affidavit from Ermal's son, Larry, stating that Ermal has lost weight, naps frequently, is in frail health, is confined to her wheelchair, sometime has difficulty remembering events, sometimes confused over seemingly uncomplicated matters, and has bad vision that might hinder her from reading documents placed in front of her. Affidavit of Larry Florence.
 {¶ 8} Plaintiff-appellants responded by arguing that Larry is not a doctor or an expert and, therefore, his opinion is just a general opinion. Furthermore, plaintiff-appellants offered an additional affidavit from Dr. Myers, which asserted that Ermal was "unable to undergo any type of mental health evaluation without serious risks to her health, particularly if she [was] removed from her current assisted living [facility]." Second Affidavit of Dr. Carla Myers, May 27, 2004. Finally, plaintiff-appellants suggest that Ermal's current mental competency is irrelevant to her mental competency at the time of the transactions in question.
 {¶ 9} On June 2, 2004, the trial court granted the defendant-appellees motion for an independent medical examination. The court stated:
Based on the allegations in the complaint, the court findsthat the mental condition of plaintiff Ermal Florence is incontroversy, specifically with regard to defendants' counterclaimagainst plaintiffs, Harold Florence and Janet Smelser, allegingthat they used undue influence upon Ermal Florence. The issue ofthe mental condition of Ermal Florence is also implicit inplaintiffs' claim for declaratory judgment to uphold certainactions of Ermal Florence regarding transfer of property.Although the examination defendants seek may not result in directevidence of her mental condition at the time of those actions,nevertheless, it may provide circumstantial evidence with regardto that issue.
Judgment Entry on Defendants' Motion for Independent Medical Exam at p. 1.
 {¶ 10} Based on the trial court's judgment, the plaintiff-appellants appeal alleging three assignments of error. For the sake of judicial economy, the assignments of error will be discussed together.
 Assignments of Error The trial court erred in determining that the mental conditionof ermal florence is "in controversy" such that a psychiatricexamination of her should be compelled.
 The trial court erred in determining that there is "goodcause" for a pyschiatric examination of ermal florence.
 The trial court erred and abused its discretion in ordering apsychiatric evaluation of ermal florence under the facts andcircumstances of this case.
 {¶ 11} Civ.R. 35(A) states, in relevant part:
When the mental or physical condition . . . of a party . . .is in controversy, the court in which the action is pending mayorder the party to submit himself to a physical or mentalexamination. . . . The order may be made only on motion for goodcause shown and upon notice to the person to be examined and toall parties and shall specify the time, place, and manner,conditions, and scope of the examination and the person . . . bywhom it is to be made.
 {¶ 12} In Schlagenhauf v. Holder (1964), 379 U.S. 104,85 S.Ct. 234, the United States Supreme Court interpreted the "controversy" and "good cause" language in Federal Rule of Civil Procedure 35.[2] The Court stated:
[The "good cause" and "in controversy" requirements] are notmet by mere conclusory allegations of the pleadings — nor by mererelevance to the case — but require an affirmative showing by themovants that each condition as to which the examination is soughtis really and genuinely in controversy and that good faith existsfor ordering each particular examination.
Id. at 118 (brackets added for clarification). In order to prove the "good cause" and "in controversy" requisites for a Civ.R. 35 medical exam, "the movant must produce sufficient information, by whatever means, so that the . . . judge can fulfill his function mandated by the Rule." Id. at 119; In reGuardianship of Johnson (1987), 35 Ohio App.3d 41, 44,519 N.E.2d 655 ("The court held in [Schlagenhauf] that the `in controversy' and `good cause' requirements of Civ.R. 35 are not automatically established by mere conclusory allegations of the pleadings, nor by mere relevance to the case."). Analogizing to a negligence action, the Court suggested:
Of course, there are situations where the pleadings alone aresufficient to meet these requirements. A plaintiff in anegligence action who asserts mental or physical injury placesthe mental or physical injury in controversy and provides thedefendant with good cause for an examination to determine theexistence and extent of such asserted injury. This is not onlytrue as to a plaintiff, but applies equally to a defendant whoasserts his mental or physical condition as a defense to a claim,such as, for example, where insanity is asserted as a defense toa divorce action.
 Schlagenhauf, 379 U.S. at 119. Finally, granting a medical examination order pursuant to Civ.R. 35 is within the sound discretion of the trial court, which will not be disturbed absent an abuse of discretion. Bowsher v. Bowsher (June 30, 1992), 4th Dist. No. 91CA19, 1992 WL 154175 at *4, unreported. An abuse of discretion connotes more than an error of law or judgment; it implies the court's attitude is unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219 450 N.E.2d 1140.
 {¶ 13} In the case sub judice, the defendant-appellees suggest there are defenses and counterclaims that are filed with "good cause" and which place Ermal's mental health "in controversy." Namely, the defendant-appellees argue that the plaintiff-appellants maintained undue influence over Ermal, which brings into question Ermal's mental susceptibility. Furthermore, the defendant-appellees contend the plaintiff-appellants bring Ermal's mental health into "controversy" because the plaintiff-appellants requested a declaratory judgment in their complaint to clarify that all of Ermal's property transfers (e.g. real estate parcels and certificate of deposits) to Harold and Janet were legally valid.
 {¶ 14} To prove undue influence, one must show "a susceptible testator, another's opportunity to exert it, the fact of improper influence exerted or attempted, and the result showing the effect of such influence." West v. Henry (1962), 173 Ohio St. 498,501, 184 N.E.2d 200. In order for undue influence to invalidate a will, the Ohio Supreme Court held that the influence
must so overpower and subjugate the mind of the testator as todestroy his free agency and make him express the will of anotherrather than his own, and the mere presence of influence is notsufficient. Undue influence must be present or operative at thetime of the execution of the will resulting in dispositionswhich the testator would not otherwise have made.
Id. (citing 94 C.J.S. Wills § 224, p. 1064) (emphasis added and internal quotations omitted). Similarly, if one is seeking a declaratory judgment in order to prove certain transactions are legally valid because another party is challenging the transaction's validity based on lack of mental capacity, then the mental capacity in question is the capacity of the parties at the time of the transaction.
 {¶ 15} After reviewing the record, it appears that Ermal'scurrent mental health is not "in controversy" within the definition of Civ.R.35. On the other hand, the mental health that is "in controversy" is her mental capacity at the time of the alleged undue influence, as well as at the time when the transactions took place for which plaintiff-appellants seek a declaratory judgment. Even the trial court, in its decision to grant a psychiatric evaluation, noted that "[a]lthough the examination defendants seek may not result in direct evidence of her mental condition at the time of those actions, nevertheless, it may provide circumstantial evidence with regard to that issue."
 {¶ 16} Given the lack of evidentiary support to call into question Ermal's mental health at the time of the transactions, we conclude that subjecting Ermal to rigorous psychiatric evaluation at a foreign medical center given her poor physical health constitutes an abuse of discretion. Most importantly, there is no medical testimony in the record to suggest that a current evaluation of Ermal's mental health will provide insight for a trier-of-fact to determine Ermal's susceptibility to undue influence several years earlier. On the contrary, Ermal's treating physician's affidavit suggests otherwise in stating that within a reasonable degree of medical certainty, Ermal is currently not suffering from Alzheimer's disease and is not incompetent. Thus, the first, second, and third assignments of error are sustained, the decision of the trial court ordering an independent medical examination is reversed, and the matter is remanded to the trial court for further proceedings.
Judgment Reversed and Cause Remanded.
 Bryant and Rogers, J.J., concur.
[1] Other parties were joined in this lawsuit as defendants; however, their addition has no relevance to any issues in the case before us.
[2] The Ohio Civ.R.35 Committee Notes, which were drafted in 1970, explains that the Ohio version of Civ.R.35 is very similar in wording and effect to the Federal Rules of Civil Procedure Rule 35. The only difference, the committee points out, is the use of the word "examiner" in the Ohio version versus the word "physician" in the Federal Rules. It is therefore appropriate to use the U.S. Supreme Court's interpretation of the rule, which is cited in the Ohio Committee Notes themselves. See, e.g. Kinseyv. Erie Insurance Group, Franklin App. No. 03AP-51, 2004-Ohio-579.