[Cite as *In re Guardianship of Poulos*, 2011-Ohio-6472.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 96366**

## IN RE:   GUARDIANSHIP OF NIKOLITSA POULOS

### JUDGMENT:
### AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Court Division
Case Nos. 2009 GDN 0147749 and 2009 GDN 0147749 B

**BEFORE:**   Kilbane, A.J., Sweeney, J., and Cooney, J.

**RELEASED AND JOURNALIZED:**   December 15, 2011

**ATTORNEY FOR APPELLANT**

George K. Simakis
Simakis & Kisil, L.L.P.
5900 Ridge Road
Suite 200
Parma, Ohio 44129

**ATTORNEYS FOR APPELLEES**

Loretta A. Coyne
Richard J. Stahl
18051 Jefferson Park Drive
Suite 102
Middleburg Heights, Ohio 44130

**FOR CUYAHOGA COUNTY ADULT PROTECTIVE SERVICES**

William D. Mason
Cuyahoga County Prosecutor
Kelli Kay Perk
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

William D. Mason
Cuyahoga County Prosecutor
Francis X. Cook
Assistant County Prosecutor
1641 Payne Avenue
Room 505
Cleveland, Ohio    44114

MARY EILEEN KILBANE, A.J.:

{¶ 1}  Counsel, acting on behalf of ward, Nikolitsa Poulos, appeals from the order of the probate court that denied his motion to terminate the guardianship.  For the reasons set forth below, we affirm.

{¶ 2}  On June 4, 2009, Bess Vrettos, niece of Nikolitsa Poulos, filed an application for appointment of guardian of Poulos's person, indicating that Poulos has dementia and is incompetent pursuant to R.C. 2111.01(D).  On July 7, 2009, Brenda K. Harrison, Poulos's cousin, filed an application for appointment of guardian for Poulos's estate, maintaining that Poulos has dementia and is incompetent pursuant to R.C. 2111.01(D).

{¶ 3}  On June 26, 2009, Dr. John Mihalek filed a Statement of Expert Evaluation in which he stated that he had interviewed Poulos on five occasions and determined that she exhibits cognitive deficits in multiple areas.  He opined that she was suffering from vascular dementia, most likely had Alzheimer's disease, and that her condition was progressive and irreversible.  Dr. Mihalek further indicated that Poulos's deficits in functioning have compromised her ability to care for herself and ensure her own safety. He recommended that she live in an assisted living facility.  A court investigator also submitted a report in which he found that Poulos exhibited cognitive impairments and presented a risk to herself without increased supervision and assistance.  Following a hearing before a magistrate on August 26, 2009, Poulos was found to be incompetent.

The court appointed Vrettos guardian of Poulos's person and Harrison guardian of her estate.

{¶ 4} On May 27, 2010, Poulos, apparently upset about being denied control of her bank accounts, had an altercation with Vrettos and was admitted to MetroHealth Hospital for psychiatric care. On May 28, 2010, Poulos filed a motion to terminate the guardianships, asserting that she is competent to conduct her own affairs and that the guardians have not acted in her best interests. Poulos was subsequently transferred to Arden Courts, an assisted living facility in Parma.

{¶ 5} On July 2, 2010, counsel, acting on behalf of Poulos, filed a motion to replace the guardians, which was supported by an affidavit from Sophia Pantelatou. Pantelatou averred that she had visited Poulos at MetroHealth Hospital and that Poulos exhibited depression and anxiety about not being permitted to return to her home. She further averred that Poulos appeared to be aware of her present state and able to live independently. On July 7, 2010, counsel, acting on behalf of Poulos, filed a motion to show cause, objecting to Harrison's requiring that visitors first obtain her consent to visit Poulos, and further, that he had been unable to meet with Poulos. Counsel also filed a motion to authorize MetroHealth Hospital to release Poulos's medical records directly to Dr. Abhishek Jain, a physician she retained in connection with the motion to terminate the guardianships.[1]

---

[1] Counsel for Poulos concedes that the records were released to the guardians.

{¶ 6} On October 22, 2010, the magistrate held a hearing on all of the outstanding motions.[2] At the start of this hearing, counsel for Poulos complained that MetroHealth Hospital had not forwarded Poulos's medical records to Dr. Jain, and the following exchange occurred:

> **"MAGISTRATE MILLS: With regard to Dr. Jane [sic], has your client ever been seen by Dr. Jane [sic]?**
>
> **MR. SIMAKIS: No.**
>
> **MAGISTRATE MILLS: With regard to the medical records from Metro, have you ever sought any kind of release or consent from Ms. Coyne [counsel for the guardians]?**
>
> **\* \* \***
>
> **MS. COYNE: The answer is no your honor.**
>
> **MAGISTRATE MILLS: I'm just going to take judicial notice that a medical statement was filed with the court as part of the original guardianship and was, you know, part of that record, was June 26th, 2009 dated by a Dr. John Mihalek. That particular medical report indicated a diagnosis of vascular dementia and most likely Alzheimer's [which has a] progressive, deteriorating course.**
>
> **Mr. Simakis, do you have any medical statement from a doctor or other medical professional that is contrary to this particular statement?**
>
> **MR. SIMAKIS: As the court knows, we have attempted to get that. We have court orders that have ordered that and those court orders have been contemptuously denied.**

---

[2] Counsel also filed an addendum to the motion to show cause demanding an accounting for certain cash withdrawals and expenditures, but the magistrate noted that an accounting was not yet required.

**MAGISTRATE MILLS: And the answer, I will translate, to that question I just asked is no, there is no medical statement.**

**[Y]ou're selective on how you go about seeking information. That's my observation. This information is available a variety of different ways. I recall at pretrial, Ms. Coyne indicated that her clients would sign consents and would release the information to you. You chose not to seek that course." (Tr. 22-28.)**

{¶ 7} The magistrate then dismissed the motion to terminate the guardianships and stated:

**"The ward is certainly entitled to have an evaluation done and that doctor is entitled to see her medical records. The concept of it is not the problem. It's just there are things done over the last five months that haven't been done, so we can't leave this particular motion pending for that reason, but again, the key is getting a medical evaluation, and when that occurs we could revisit that whole issue sometime in the future."**

{¶ 8} Proceeding with the other pending motions, counsel for Poulos had numerous lay witnesses appear at the hearing. The court did not permit them to testify due to the absence of medical testimony to support Poulos's competency. According to counsel for Poulos, these witnesses would have testified regarding Poulos's competency and ability to live independently. The court permitted Monica Roberts ("Roberts"), a social worker with the Cuyahoga County Adult Protective Services, to testify. Roberts testified that she met Poulos after obtaining a referral to investigate issues surrounding Poulos becoming combative with Vrettos. Roberts interviewed Poulos at her home.

Poulos was confused and forgetful, had difficulty understanding the nature of the interview, and indicated that she believed Vrettos was taking her money and was trying to put her into a nursing home. She stated that her friend, Don Ksiezyk, had gotten her an attorney, and she called Ksiezyk twice during the interview.

{¶ 9} Roberts stated that Poulos has competency issues and could not continue to live alone in her home because she needed more services that the in-home caregivers could provide. She recommended that Poulos remain in assisted living at Arden Courts. Caseworker notes also indicated that Vrettos had acted appropriately in caring for Poulos, and there was no evidence that either guardian had failed to act in Poulos's best interests.

{¶ 10} The court then conducted a voir dire examination of Poulos. Poulos informed the court that she does not want to remain at Arden Court and that there was no reason for her to be at Arden Court because she did not receive treatment. She could not recognize her attorney and did not know that she was involved in court proceedings concerning the guardianship. In addition, she indicated that her guardians had not treated her poorly.

{¶ 11} At the close of the hearing, counsel for the guardians asked the court to dismiss all outstanding motions since Poulos did not understand the proceedings and lacked the capacity to retain counsel. Counsel for the guardians also orally moved for an award of attorney's fees if Poulos's counsel did not dismiss his pending motions.

{¶ 12} On November 4, 2010, the magistrate determined that Poulos's motion to terminate the guardianships should be denied, and further determined that the fees incurred by her attorney did not meet the three-part test enunciated in *In re Guardianship of Allen* (1990), 50 Ohio St.3d 142, 552 N.E.2d 934, for determining whether payment should come from the guardianship estate. In relevant part, the magistrate concluded:

> **"[C]ounsel for the ward acknowledged that he did not have a Statement of Expert Evaluation to support his Motion to Terminate Guardianship, despite the pendency for a period of five months. The Magistrate finds as a matter of law that he cannot prevail on [the] Motion to Terminate Guardianship without medical evidence to support the motion. * * ***
>
> **[A] prudent attorney would have taken into account the medical evidence already existing in the court file before embarking on a scorched earth program of litigation. The ward's cognitive disabilities, her lack of short term memory, the progressive nature of the disease, and the ward's lack of judgment and insight were well documented more than a year ago.**
>
> **Mrs. Poulos is not happy that she has been placed in assisted living, she wants to go home. But it is obvious, from review of the court record, that issue is the very reason that the guardianship was established and by all appearances the guardians have acted appropriately.**
>
> **\* \* \***
>
> **In any event, on the day the trial was commenced, Mrs. Poulos had no interest in pursuing an adversary action against her nieces, had no understanding of guardianship, and she has no recollection of engaging legal counsel, nor does she recognize Mr. Simakis as her legal counsel."**

{¶ 13} Counsel for Poulos filed various objections, essentially contending that she should not have been removed from her home, that the assisted living facility did not

provide treatment, that the actions of her healthcare providers had prevented her from obtaining an expert evaluation to support her motion to terminate the guardianships, and that the guardians had not acted appropriately in this matter.

{¶ 14} On December 30, 2010, the trial court overruled the objections and concluded that the magistrate correctly based his decision on the applicable facts and law. In relevant part, the trial court noted:

> **"The Court finds that the Ward had no medical evidence to indicate that she had been restored to competency requiring a dismissal of the Motion to Terminate Guardianship."**

{¶ 15} Herein, counsel for Poulos maintains that the trial court abused its discretion in (1) failing to terminate the guardianship; (2) failing to order an independent medical evaluation; (3) failing to remove the guardians; (4) failing to require the guardians to file an accounting of Poulos's funds; (5) failing to permit the payment of his attorney's fees from the guardianship estate.

1. Failure to Terminate the Guardianship

{¶ 16} The probate court is required to act in the best interest of the incompetent individual, but it is well settled that a probate court has broad discretion in appointing guardians. *In re Estate of Bednarczuk* (1992), 80 Ohio App.3d 548, 551, 609 N.E.2d 1310. Decisions regarding the appointment of guardians will not be reversed absent an abuse of discretion. Id. The term "abuse of discretion" means more than a mere error of law or judgment; it implies an attitude on the part of the trial court that is unreasonable,

arbitrary, or unconscionable.   Id., citing *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

{¶ 17} With regard to the appointment of a guardian, we note that R.C. 2111.02 grants the probate court authority to appoint a guardian for the person, the estate, or both, where the applicant has shown by clear and convincing evidence that the prospective ward is so mentally impaired as a result of a mental illness or disability that she is incapable of taking proper care of herself or her property. R.C. 2111.02(C)(3); R.C. 2111.01(D).

{¶ 18} With regard to the termination of a guardianship, we note that there is a presumption that once a person is found to be incompetent that he or she remains incompetent but the presumption is rebuttable.   *In re Guardianship of Michael,* Franklin App. No. 07AP-264, 2007-Ohio-5967, citing *In re Breece* (1962), 173 Ohio St. 542, 184 N.E.2d 386.

{¶ 19} Pursuant to R.C. 2111.47, a guardianship may be terminated upon "satisfactory proof" that the necessity for the guardianship no longer exists. "Satisfactory proof" to rebut the presumption of continued incompetence has been offered as that which "causes the presumption to disappear," or "counterbalances the presumption," or "leaves the case in equipoise."   Id., quoting *Breece*.

{¶ 20} In this case, the Statement of Expert Evaluation prepared by Dr. John Mihalek indicated that Poulos was suffering from vascular dementia, most likely had

Alzheimer's disease, and that her condition was progressive and irreversible. Dr. Mihalek further reported that Poulos's condition has compromised her ability to care for herself and ensure her own safety. A court investigator also concluded that Poulos exhibited cognitive impairments and presented a risk to herself without increased supervision and assistance, and following a 2009 hearing, the court concluded that Poulos was incompetent and in need of guardians of her estate and person.

{¶ 21} At the subsequent evidentiary hearing, Roberts testified that Poulos has competency issues and could not continue to live alone in her home because she needed more services than the in-home caregivers could provide. This evidence constitutes clear and convincing evidence supporting the court's appointment of guardians for Poulos.

{¶ 22} In opposition to this evidence of record, counsel for Poulos was prepared to offer testimony from lay witnesses who had visited with Poulos, but he presented no expert evidence to indicate that Poulos is now competent or to otherwise rebut the presumption that she continues to be incompetent in accordance with the prior evidence. Further, although Poulos informed the court that she does not want to remain at Arden Court and stated that there was no reason for her to be there because she did not receive treatment, she could not recognize her attorney and did not know that she was involved in court proceedings concerning the guardianship. In addition, she indicated that her guardians had not treated her poorly. In short, counsel for Poulos failed to present

"satisfactory proof" that the necessity for the guardianship no longer exists. See R.C. 2111.47.

**{¶ 23}** Therefore, in light of the evidence of record, the probate court acted in Poulos's best interests and did not abuse its discretion in appointing a guardian for Poulos and, on the basis of the record presented, did not abuse its discretion in refusing to terminate the guardianships.

2. Failure to Order an Independent Medical Evaluation

**{¶ 24}** Pursuant to R.C. 2111.02(C)(7), prior to the appointment of a guardian or limited guardian, the court shall conduct a hearing during which the alleged incompetent person has the right to have evidence of an independent expert evaluation introduced. Thereafter, the granting of a medical examination is within the sound discretion of the trial court. *Florence v. Florence*, Mercer App. No. 10-01-09, 2004-Ohio-6493.

**{¶ 25}** In this matter, we find no abuse of discretion. Throughout the proceedings below, Poulos asked for her records to be given directly to Dr. Jain, and asked that Dr. Jain be deemed her primary physician. She did not raise the issue of an independent medical examination until she filed her objections to the magistrate's decision. This claim is without merit.

3. Failure to Remove the Guardians

**{¶ 26}** R.C. 2109.24 authorizes the court to remove a fiduciary for "neglect of duty, incompetency, or fraudulent conduct, because the interest of the property, * * * or

estate that the fiduciary is responsible for administering demands it, or for any other cause authorized by law."

{¶ 27} The removal of a guardian is within the sound discretion of the trial court, and a reviewing court will not reverse the order of the trial court unless it appears that the lower court abused its discretion. *In re Estate of Bednarczuk.* "'To warrant removal, the probate court need only find that the best interests of the ward will be served by the guardian's removal.'" *In re Burrows,* Portage App. No. 2006-P-0118, ¶43, quoting *In re Connell* (Aug. 24, 1995), 8th Dist. No. 68261.

{¶ 28} In this matter, we find no abuse of discretion. There was no evidence that the guardians neglected their duties, were incompetent, engaged in fraudulent conduct, or that the best interests of the ward or the demands of justice demanded removal.

{¶ 29} This claim lacks merit.

4. Failure to Require the Guardians to File an Account

{¶ 30} Pursuant to R.C. 2109.302, the guardians had two years from the date of appointment within which to file accounts. The trial court did not err in failing to require the guardians to file accounts in this matter since the accounts were not yet due. This claim lacks merit.

5. Failure to Award Attorney's Fees from the Guardianship Estate

{¶ 31} As an initial matter, we note that a ward may not bind his or her guardianship estate to obligations based upon contract, unless ratified by the guardian.

*In re Guardianship of Allen*; *Sovak v. Spivey*, 155 Ohio App.3d 479, 2003-Ohio-6717, 801 N.E.2d 896.

**{¶ 32}** In determining whether attorney fees are in the nature of necessities, and therefore payable from the guardianship estate, the probate court must apply the test announced in *In re Guardianship of Allen*. Pursuant to this test, the court must "determine whether the attorney acted in good faith, whether the services performed were in the nature of necessities, and whether the attorney's actions benefitted the guardianship." Id. The probate court's decision is reviewed for an abuse of a discretion. *Estate of Poole v. Conwell*, Cuyahoga App. No. 88414, 2007-Ohio-2510.

**{¶ 33}** In this matter, the services were not in the nature of necessities and the attorney's actions did not benefit the guardianship. The trial court therefore acted within its discretion in refusing to award payment of the fees from Poulos's guardianship estate.

**{¶ 34}** The assignment of error is without merit.

Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

JAMES J. SWEENEY, J., and
COLLEEN CONWAY COONEY, J., CONCUR